**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Audley DUNKLEY, Coval Baker, Joseph Brown, Defendants–Appellants.**

**No. 89–3996. Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Sept. 7, 1990.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla., for defendant-appellant Audley Dunkley.

Donald M. Sheehan, Pensacola, Fla., for defendant-appellant Coval Baker.

James R. McAtee, Pensacola, Fla., for defendant-appellant Joseph Brown.

Randall Hensel, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before FAY, ANDERSON and COX, Circuit Judges.

PER CURIAM:

Coval Baker, Audley Dunkley, and Joseph Brown, defendants-appellants, were convicted of conspiracy to possess with intent to distribute 50 grams or more of cocaine base. All three defendants contend on appeal that the trial court erred in denying their motions to suppress the cocaine base that formed the basis of their convictions.[1] For the following reasons, we affirm the judgment of the district court.

BACKGROUND

On July 10, 1989, Georgia State Trooper Michael Tucker stopped a white Nissan Sentra driven by defendant Joseph Brown. Defendant Coval Baker occupied the front

**1.** The other arguments raised by the defendants are without merit and warrant no discussion by this court.

passenger seat of the automobile, and defendant Audley Dunkley was seated in the rear. Officer Tucker testified at the suppression hearing, and the district court found, that Tucker stopped the vehicle because he could not read the expiration date on the temporary tag taped to the rear window of the vehicle. Officer Tucker further testified that he stopped most vehicles he identified as having an unreadable expiration date on a temporary tag.

After Tucker stopped the defendants, he approached the rear of the vehicle on foot and determined that the temporary tag had expired. The driver, Joseph Brown, produced a valid Florida driver's license and told Tucker that the car was a rental vehicle rented to "his old lady." When Tucker asked to see the rental agreement, Brown was unable to produce it. Tucker then informed Brown the reason for the stop, and he explained to Brown that he intended to issue a faulty equipment notice. As Tucker wrote out the notice, he engaged defendant Brown in conversation. Tucker asked Brown about his travel plans, and Brown responded that he was traveling to "Pepsi–Cola" [Pensacola] to attend his cousin's funeral. At first Brown said he did not know his deceased cousin's name, but then he informed Tucker that his cousin was named John Brown and that he had died of AIDS. Brown further stated that the person sitting in the front seat of the vehicle was his friend, but that he did not know the friend's name. Tucker questioned the other two defendants, Baker and Dunkley, and asked for identification.

Officer Tucker then requested consent from Brown to search the vehicle for drugs. Tucker testified at the suppression hearing that Brown responded, "Sure, we don't use drugs." This testimony was disputed by all three defendants: each testified at the hearing that when Tucker sought consent to search the vehicle, Brown remained silent. The district court found that the defendants' testimony was unbelievable and that Brown voluntarily agreed to the search.

Officer Tucker searched the vehicle with the aid of Falco, a dog that was trained to sniff for drugs. Falco first alerted to the right side of the car, then alerted to a stuffed rabbit lying on the back seat of the vehicle. Tucker testified that when he took the rabbit from the dog and squeezed it, he felt plastic inside the rabbit and also a harder substance. Tucker stated that the fabric at the bottom of the rabbit had been split so that he could reach his hand up into the rabbit. When he did so, he pulled out a plastic baggie containing crack cocaine.

Tucker then continued his search of the vehicle; he found a loaded handgun inside the unlocked glove box and some rolling papers in the center console between the two front seats. A pat-down of the defendants revealed plastic bags of cocaine hidden underneath the clothing on Dunkley and Baker.

## PRETEXTUAL STOP

■ A search of an individual is improper if the initial seizure of the person or vehicle was unlawful. *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990). A police officer may stop a vehicle "[w]hen there is ... probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations" relating to the operation of motor vehicles. *Id.* Florida's Uniform Traffic Control law, Fla.Stat. § 316.001 *et seq.* (1990), requires that all writing upon license plates be "plainly visible and legible at all times 100 feet from the rear or front." Fla.Stat. § 316.605. The district court credited Officer Tucker's testimony that the expiration date written on the temporary tag was illegible; the court correctly held that this gave Tucker probable cause to stop the vehicle.

■ The defendants argue that even if the illegibility of the tag's expiration date gave rise to probable cause to stop the vehicle, such was not Officer Tucker's true motivation for the stop. They claim that Tucker stopped the car because he was suspicious of drug-related criminal activity. They support their claim by pointing to Tucker's testimony at the suppression hearing that he "suspect[s] everybody of transporting drugs ... until they can prove

otherwise." Defendants also point out that Tucker was patrolling the highway accompanied by a drug-sniffing dog.

As this court noted in *United States v. Strickland*, "It remains an open question whether a stop for probable cause might nevertheless be invalid as pretextual if a reasonable officer would not have made the seizure in the absence of an illegitimate motivation." 902 F.2d at 940. As in *Strickland*, we need not address this issue here because the district court found that the stop was not pretextual. The district court credited Officer Tucker's testimony that he stops "most" vehicles that have an unreadable temporary tag, and that whether he stops such a vehicle depends on whether he is on another call at the time he detects the problem. Based upon that testimony, we cannot hold that the district court's finding was erroneous. *See United States v. Strickland*, 902 F.2d at 940 (holding that officer's testimony that he stopped every car he observed that was doing what defendant's car was doing was sufficient to support the district court's finding that the stop was not pretextual); *United States v. Bates*, 840 F.2d 858, 860 (11th Cir.1988).

## CONSENT TO THE SEARCH

■ A search of property, without warrant or probable cause, is proper under the Fourth Amendment when preceded by valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The consent must be voluntary, *id.*, and the person giving the consent must have authority to do so, *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), or must reasonably appear to have the authority to do so, *Illinois v. Rodriguez*, —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The district court's factual findings as to whether or not voluntary consent was given may only be disturbed if they are clearly erroneous. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir.1989). Here, the district court found that the defendant Brown voluntarily agreed to a search of the vehicle; this finding is not clearly erroneous.

■ Defendants argue that even if Brown consented to a general search of the vehicle, he did not have authority to do so. Defendants also contend that Brown had no authority to consent to a search of the toy rabbit, located on the back seat of the car. Their contentions are premised on the fact that Brown, although the driver of the vehicle, was not the person to whom the car was rented. The vehicle was rented by Baker's wife; she had given Baker permission to use the car. Baker, in turn, gave Brown permission to drive the car.

The Supreme Court has held that the voluntary consent of any joint occupant of a residence to search the premises is valid against the co-occupant, permitting evidence discovered in the search to be used against the co-occupant at a criminal trial. *United States v. Matlock*, 415 U.S. at 169, 94 S.Ct. at 992. Authority to consent to a search arises from

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 172 n. 7, 94 S.Ct. at 993 n. 7. *Matlock's* "joint access or control" test for valid third-party consent to a search of property has never been applied by this court in the context of a search of a vehicle. We have, however, applied this test in the context of a search of a residence, *see United States v. Bertram*, 805 F.2d 1524, 1528 (11th Cir.1986) (wife of defendant had joint access to the defendant's house, so could give valid third-party consent to entry), and in the context of a search of personal property, *see United States v. Shields*, 675 F.2d 1152, 1159 (11th Cir.) (person who had owner's permission to use the original copy of a tape recording and who retained his own copy of the tape had sufficient interest in the tape to enable him to authorize the government's listening to the recorded conversation), *cert. denied*, 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112

(1982). We see no reason not to apply *Matlock's* "joint access or control" test for valid third-party consent to the search of a vehicle. *See United States v. Morales,* 861 F.2d 396, 399 n. 8 (3d Cir.1988) (applying "joint access or control" test in the context of third-party consent to a search of a vehicle).

Under the rationale of *Matlock,* a third party in sole possession and control of a vehicle clearly has the authority to consent to its search. *See United States v. Morales,* 861 F.2d 396, 399 n. 8 (3d Cir. 1988); *United States v. Diaz–Albertina,* 772 F.2d 654, 658–59 (10th Cir.1985), *cert. denied,* 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987). By relinquishing possession to another, the owner or lessee of the vehicle evidences an abandonment of his or her privacy interest in the vehicle; thus, it is reasonable to conclude that the third party to whom possession was surrendered was also given authority to consent to a search of all areas of the vehicle. *See Morales,* 861 F.2d at 404 (Sloviter, J., dissenting).

It is a somewhat different question whether an owner/lessee of a vehicle who is a passenger in the vehicle completely abandons his or her privacy interests to the driver, to the extent that the third-party driver may rightfully consent to a full search of the entire vehicle. *Id.* It is clear, however, that even if the owner/lessee is present as a passenger, the driver of a vehicle has some amount of joint access to the vehicle, and, in fact, the driver has immediate control over the vehicle.

In this case, defendant Brown, as driver of the Nissan Sentra, had joint access to and control at least over the front and back seats of the vehicle. Brown consented to the search within the presence and hearing of defendant Baker, the defendant with the superior possessory interest in the car. Thus, Brown's act of giving consent and the scope of the consent given were apparent to Baker; his failure to object confirms that Brown indeed had the requisite authority to consent to the search of the vehicle.

The facts of this case are nearly identical to those of a pre-*Matlock* case, *United States v. Horton,* 488 F.2d 374, 380 n. 6 (5th Cir.1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).[2] There, Horton possessed the keys to the vehicle and identified himself as its owner in the presence of and without objection from the true owner. The court held that Horton was authorized to consent to the search of the vehicle. Similarly, in this case, Brown told Officer Tucker that his "old lady" had rented the car, and it was Brown who took the lead in dealing with the police officers and who consented to the search. All of this occurred within the hearing of Baker, and yet he made no objection. Under the reasoning of *Horton,* Brown was authorized to consent to the search of the vehicle.[3] *See also United States v. Baldwin,* 644 F.2d 381, 383 (5th Cir. Unit A 1981) (wife of defendant may give consent to search automobile jointly controlled with her husband, despite his refusal to consent); *cf. United States v. Varona–Algos,* 819 F.2d 81, 83 (5th Cir. 1987) (driver could consent to search, when so far as the officer knew the driver, not the passenger-owner, was in charge of the vehicle).[4]

---

**2.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**3.** Because the drug-sniffing dog alerted to the right side of the car and then the stuffed rabbit on the back seat, *see infra,* we need not address the extent to which a driver under these circumstances may consent to a search of a hidden compartment within a car, a locked truck or glove box, or a passenger's luggage or other personal effects. Nor do we address the extent to which a driver may consent to a search of the

vehicle over the objection of a passenger who has a superior possessory interest in the vehicle.

**4.** Another possible reason why defendant Brown's consent to search the vehicle might be valid is found in the doctrine of apparent authority, recently articulated by the Supreme Court in *Illinois v. Rodriguez,* ⸺ U.S. ⸺, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). In that case, the Supreme Court held that a warrantless entry into a residence is valid when the entry is based upon the consent of a third party whom the police, at the time of the entry, reasonably believe possesses common authority over the

Whether the scope of Brown's consent to the search could include consent to search the toy rabbit need not be addressed by this court.[5] Falco, the drug-sniffing dog, alerted to the right side of the car and then to the toy rabbit during the course of Officer Tucker's legitimate search of the vehicle. The rabbit was situated in the open on the back seat of the automobile. When Falco alerted to the rabbit, Officer Tucker then had probable cause to inspect it further. *See United States v. Sentovich,* 677 F.2d 834, 838 n. 8 (11th Cir.1982); *see generally United States v. Wilson,* 894 F.2d 1245, 1254 (11th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990); *United States v. Alexander,* 835 F.2d 1406, 1408–09 (11th Cir.1988).

Because Brown gave valid third-party consent to the search of the vehicle, Officer Tucker's warrantless search of the vehicle did not violate the Fourth Amendment, and the cocaine found in the toy rabbit may not be suppressed on that basis.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

premises, but who in fact does not do so. Because this issue was not addressed by the district court, we decline to determine on appeal whether Brown had apparent authority to consent to the search.

5. Defendants argue that Brown could not consent to the search of the toy rabbit because Baker and Dunkley had possessory interests and expectations of privacy in the rabbit, and therefore they alone could give valid consent to search the rabbit. We do not reach this issue.