UNITED STATES of America, Appellee,

v.

**Dale ELDRIDGE, also known as Dale Smith, Appellant.**

UNITED STATES of America, Appellee,

v.

**John David FUGET, also known as Poncho Proffer, Appellant.**

**Nos. 91–2900, 92–2867.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1992.

Decided Jan. 29, 1993.

---

Michael Dwyer, St. Louis, MO, argued (James C. Delworth, on brief), for appellant Eldridge.

Jane C. Hogan, St. Louis, MO, argued, for appellant Fuget.

John J. Ware, St. Louis, MO, argued (Stephen B. Higgins and Dean R. Hoag, on brief, for appellee in the Eldridge appeal; Stephen B. Higgins and John J. Ware, St. Louis, MO, on brief, for appellee in the Fuget appeal), for appellee.

Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

John David Fuget and Dale Eldridge appeal their convictions for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and the enhancement of the sentences under 18 U.S.C. § 924(e)(1). We affirm.

## I.

On July 12, 1989, St. Louis police officer Earl Cobb stopped Fuget for driving at an excessive rate of speed. Eldridge and Fuget's sister were in the car with Fuget. When Cobb asked Fuget who owned the car, Fuget pointed to Eldridge. The car was actually registered to Donald Eldridge, Eldridge's stepfather. When Cobb asked Eldridge for identification, however, Eldridge gave Cobb a valid driver's license with the name of Dale Smith. Eldridge told Cobb that Smith was a "phony name." Cobb then asked Eldridge to step out of the car and continued to question him. During their conversation, Eldridge placed a man's ring he was holding in his hand on the car; he told Cobb, however, that it belonged to his wife and that they were taking it to a jewelry store to be sized.

While they were talking, Officer James Hegger arrived. Because of the discrepancy in the car registration and the claims of ownership made by "Dale Smith," Cobb asked Fuget for permission to look in the car for proof of ownership and received it. Hegger searched the interior of the car without success. Later, Hegger told Cobb that Fuget and his sister had said they were on their way to the hospital. Because of the discrepancy in the information concerning ownership of the car, the discrepancy in the statements as to where they were going, and the appearance of the car, Cobb suspected that the car might be stolen and asked if he could look in the trunk of the car. Fuget responded that he could if there was a key. Hegger retrieved the keys from the ignition, opened the trunk, and found several firearms.

Subsequent investigation determined that the firearms found in the trunk of the

car were stolen from Kim Turner's house during the evening hours of July 11 or the early morning hours of July 12, 1989. Rance Kessinger testified at trial that Eldridge told him of Eldridge's and Fuget's plan to burgle Turner's house and that they had "checked out" the house. A jury found Fuget and Eldridge guilty of being a felon in possession of a firearm in violation of section 922(g)(1). The district court[1] sentenced Fuget to a prison term of fifteen years and Eldridge to a prison term of seventeen years, each to be followed by a three-year term of supervised release.

Fuget now argues that the evidence presented at trial was insufficient to establish all of the necessary elements for conviction; that he was prejudiced by improper statements made by the prosecutor during his closing argument; and that the district court wrongly enhanced his sentence by the use of prior convictions founded on invalid guilty pleas. Eldridge argues that the district court erred when it denied his motion to suppress evidence of the firearms because they were obtained following a pretextual traffic stop and during a warrantless search pursuant to an invalid third-party consent.

## II.

■■■ "[Fuget's] convictions must be upheld if, viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable factfinder could have found guilt beyond a reasonable doubt." *United States v. Foote*, 898 F.2d 659, 663 (8th Cir.), *cert. denied*, 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81, *and cert. denied*, 498 U.S. 938, 111 S.Ct. 342, 112 L.Ed.2d 307 (1990). To convict Fuget for being a felon in possession of a firearm, "the government must show beyond a reasonable doubt that (1) [he] had been convicted of a felony ...; (2) [he] thereafter possessed a firearm; and (3) the firearm traveled in or affected interstate commerce." *United States v.*

*Williams*, 941 F.2d 682, 683 (8th Cir.1991). Fuget contends that the government failed to prove that he "possessed a firearm" because the guns were found in the trunk of a borrowed car he was driving and there was no evidence that he was aware of their presence. "For purposes of § 922(g)(1), [however,] firearms possession may be either actual or constructive"; "[p]ossession may be sole or joint"; and "[c]onstructive possession exists when a person has ownership, dominion, or actual control over the contraband." *United States v. Miscellaneous Firearms and Ammunition*, 945 F.2d 239, 240 (8th Cir.1991). In this instance, Fuget had dominion and control over the firearms because he had control of the keys to the trunk of the car. *See United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). In addition, there was sufficient evidence introduced at trial for a reasonable juror to conclude that Fuget knew that the firearms were in the trunk of the car.

## III.

■■■ Trial courts are vested with broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion. *United States v. Lewis*, 759 F.2d 1316, 1350 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985). When a defendant argues that the prosecution made improper remarks during closing arguments, the allegedly improper statements will be examined within the context of the entire trial to determine first whether the remarks were in fact improper, and second whether the remarks were so offensive so as to deprive the defendant of a fair trial. *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). If we must determine the prejudicial effect of improper statements, we examine: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the

**1.** The Honorable Edward L. Filippine, Chief Judge, United States District Court for the Eastern District of Missouri.

curative actions taken by the trial court." *United States v. Dougherty*, 810 F.2d 763, 768 (8th Cir.1987). "Reversal is in order only if the court determines that the jury verdict could reasonab[ly] have been affected by the argument." *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir.1976). "If an arguably improper statement made during closing argument is not objected to by defense counsel, we will only reverse under exceptional circumstances." *United States v. Nabors*, 761 F.2d 465, 470 (8th Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985).

While the prosecutor may have improperly told the jury that he believed Fuget knew that the firearms were in the trunk, *see Young*, 470 U.S. at 8–9, 105 S.Ct. at 1042–43 (prosecutor must refrain from injecting personal beliefs), Fuget did not object to that statement and he has failed to establish an exceptional circumstance warranting reversal. Even if counsel had objected, the prosecutor's single expression of personal belief was not prejudicial in this instance. *See United States v. Nersesian*, 824 F.2d 1294, 1327 (2nd Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). On the question of possession, the prosecutor also argued to the jury that the government refrained from bringing charges against another person who was in the car because of insufficient evidence. "You don't see Bonnie Baron here," he said. "She ain't charged, folks, because that's all she was was mere presence. There's no evidence to connect her to those guns." The trial court sustained defendants' objections to this remark, but the government's lawyer persisted. "Well folks," he said, "we know one thing, there's more than mere presence, okay, more than mere presence in that car to connect those two defendants. We have more than enough. And if that's all we have, we'd have been directed out, we wouldn't have them." We strongly disapprove of the government's insinuation that the trial judge viewed its case with favor and, indeed, of its seeming determination during closing argument to push the case to the very brink of mistrial. It is perhaps to be doubted whether the jury comprehended exactly what the prosecutor had intended to convey; but we shall not hesitate to reverse in circumstances of this sort, assuming a properly preserved record, should similar cases arise in the future. Nevertheless, because the prosecutor withdrew his remarks following objection and the trial court gave a cautionary instruction, we think that Fuget has failed to show actual prejudice. *See Nassar v. Sissel*, 792 F.2d 119, 123 (8th Cir.1986). Fuget also argues that the prosecutor improperly vouched for the veracity of a government witness by stating "[she said,] 'Yes, his motorcycle was there,' and that's unsolicited, unprompted and entirely the truth, exactly what [she] said." We have reviewed the prosecutor's statement and find no reversible error because we read the statement as confirming her testimony during trial, not personally vouching for the truthfulness of her testimony. Finally, we conclude that the prosecutor's statement that Fuget and Eldridge "were convicted" referred to their previous felony convictions—a necessary element of the government's case—and not to a conviction for burglary of Turner's house, of which, in fact, Fuget was acquitted. Therefore, the statement was not improper.

### IV.

Fuget had the burden of proving by a preponderance of the evidence that his prior convictions could not be used for sentence enhancement. *See United States v. Day*, 949 F.2d 973, 982 (8th Cir. 1991). After carefully reviewing the record, we conclude that the district court was not clearly erroneous in determining that Fuget's prior convictions could be considered in sentencing. *Id.* at 983. Fuget failed to prove "that the record before the judges who accepted the challenged guilty pleas should have raised a doubt about [Fuget's] competency sufficient to require those judges to hold a competency hearing sua sponte." *Id.* at 984.

### V.

Pretextual traffic stops are a violation of the Fourth Amendment. *See*,

*e.g., United States v. Portwood,* 857 F.2d 1221, 1223 (8th Cir.1988), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989). It is well settled, however, that when "an officer observes a traffic offense—however minor—he has probable cause to stop ... a vehicle." *United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991). In determining whether a traffic stop was for probable cause or was merely pretextual, a court is to make "an objective assessment of [the] officer's action in light of the facts and circumstances then known to him." *Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *see also United States v. Woodall,* 938 F.2d 834, 837 (8th Cir.1991). Whether a traffic stop is pretextual is a question of fact, and this court will not reverse unless the court was clearly erroneous. *Portwood,* 857 F.2d at 1223. When a finding of fact is "based on determinations of credibility, this court must pay even greater deference to the district court's findings." *Hornsby v. St. Louis Southwestern Ry. Co.,* 963 F.2d 1130, 1133 (8th Cir.1992). Eldridge argues that there was no credible evidence that a traffic violation occurred. The district court's conclusion that Cobb's testimony was credible and that the stop was not pretextual is certainly a permissible view of the evidence. Therefore, we may not reverse. *See id.*

## VI.

 It is also well settled that consent to a search may be given not only by the owner of the property to be searched but also by "a third party who possesse[s] common authority over or other sufficient relationship to the premises ... sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The driver of a car has the authority to consent to a search of that vehicle. As the driver, he is the person having immediate possession of and control over the vehicle. The "driver may consent to a full search of the vehicle, including its trunk, glove box and other components." *United States v. Morales,* 861 F.2d 396,

399 (3d Cir.1988); *see also United States v. Dunkley,* 911 F.2d 522, 525–26 (11th Cir. 1990) (per curiam), *cert. denied,* —— U.S. ——, 111 S.Ct. 766, 112 L.Ed.2d 785, —— U.S. ——, 111 S.Ct. 987, 112 L.Ed.2d 1071 (1991). This is true even when some other person who also has control over the car is present, if the other person remains silent when the driver consents and does not object to the search. *See, e.g., Dunkley,* 911 F.2d at 526; *Morales,* 861 F.2d at 400; and *United States v. Varona–Algos,* 819 F.2d 81, 83 (5th Cir.1987), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 255 (1987). The undisputed evidence is that Fuget gave permission for the officers to search the car's interior and trunk. Eldridge was present when permission was requested and he did not object; instead he choose to remain silent. As a result, the officer's warrantless search of the car was valid.

Accordingly, we affirm.