**UNITED STATES of America, Appellee,**

v.

**David W. HIEBERT, Appellant.**

No. 94–1401.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1994.

Decided July 27, 1994.

---

Nancy Graven, Springfield, MO, argued (Raymond C. Conrad, Jr. and Nancy R. Graven, on the brief), for appellant.

Richard Elmus Monroe, Springfield, MO, argued (Stephen L. Hill, Jr. and Cynthia J. Hyde, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WELLFORD,[*] Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Following a bench trial, David E. Hiebert was convicted of two counts of distributing marijuana in violation of 21 U.S.C. § 841(a)(1); three counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and one count of carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). On appeal, Hiebert argues that the district court [1] erred in finding that he had not established the defense of insanity and in denying his motion for judgment of acquittal on one of his felon-in-possession counts. We affirm.

## I.

On several occasions beginning in March 1991, Hiebert asked Kim Bobbette Wilkinson if she could procure a hit man to have someone killed. When Wilkinson became concerned that Hiebert was serious, she informed a local law enforcement official about Hiebert's requests. After some preliminary investigation, the local authorities contacted Special Agents Michael Schmitz and Mark James of the Bureau of Alcohol, Tobacco, and Firearms (the "ATF").

On September 5, 1991, Wilkinson, Schmitz, and James went to Hiebert's residence in a rural area of Barton County, Missouri. Hiebert informed Schmitz that he wanted Schmitz to kill Leroy Caldwell, who had broken Hiebert's nose when he intervened in an altercation between Hiebert and a former girlfriend. As consideration for his services, Hiebert gave Schmitz a .357 revolver, ammunition, marijuana, a vehicle, deeds to land in Mexico, and fifty dollars. Hiebert, Wilkinson, and the ATF agents then traveled to Nevada, Missouri, and Hiebert showed them where Caldwell lived and worked.

On September 9, Schmitz and James again visited Hiebert, who was carrying a 12-gauge shotgun when they arrived. Hiebert was angry that they had returned to his residence in their Jeep; they had planned that Schmitz would use the Jeep when he murdered Caldwell, and Hiebert was concerned that the murder would be linked to him through the Jeep. After Hiebert's concern had been allayed, he left to retrieve some marijuana. He gave the marijuana to Schmitz as additional consideration and promised him five hundred dollars.

The next day the police arrested Hiebert at his place of employment. Following the arrest, the police found a .22 caliber rifle in the pick-up truck that Hiebert had driven to work. At Hiebert's residence, Schmitz found the 12-gauge shotgun that he had observed Hiebert carrying, as well as a .410 shotgun, ammunition, marijuana, and marijuana paraphernalia. A federal criminal complaint was

* The HONORABLE HARRY W. WELLFORD, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

filed against Hiebert, charging him with distributing marijuana and being a felon in possession of a firearm.

Pursuant to a motion from Hiebert's appointed counsel, the district court ordered that Hiebert be examined to determine his competency to stand trial and to evaluate his legal sanity at the time of the alleged offenses. While Hiebert was being evaluated, a federal grand jury indicted him. After more than a month of evaluation, Dr. C. Kenneth Bowles, a clinical psychologist, diagnosed Hiebert as suffering from delusional (paranoid) disorder. In his report, Dr. Bowles opined that Hiebert was incompetent to stand trial because Hiebert apparently believed that the judge and the attorneys were part of a conspiracy against him. Dr. Bowles further opined that at the time of the alleged offenses Hiebert had been able to appreciate the nature and quality and the wrongfulness of his acts. On the basis of Dr. Bowles' report, the district court found Hiebert incompetent to stand trial and committed him to custody for evaluation and treatment.

In June 1993, the court granted Hiebert's counsel's request for an independent examination by Dr. Kenneth J. Burstin. After examining Hiebert, Dr. Burstin believed that Hiebert's mental disorder was in remission due to medication and that he was competent to stand trial. Contrary to Dr. Bowles, Dr. Burstin believed that Hiebert had been unable to appreciate the nature, quality, and wrongfulness of his behavior at the time of his alleged criminal conduct. Following Dr. Burstin's examination, Hiebert waived any issue of competency to stand trial.

At trial, Hiebert raised a defense of insanity. Pursuant to a stipulation of the parties, the district court received Dr. Bowles' report and Dr. Burstin's report, as well as the reports of six other mental-health experts. Additionally, Dr. Burstin testified in person. The court rejected Hiebert's insanity defense and convicted him on the six counts submitted to the court (a seventh count was dismissed prior to trial).

## II.

### A. Insanity Defense

Hiebert first argues that the district court erred in rejecting his defense of insanity. To establish an insanity defense, a federal defendant must prove by clear and convincing evidence (1) that he was suffering from a severe mental disease or defect at the time he committed the acts constituting the charged offenses and (2) that his disease or defect rendered him unable to appreciate the nature and quality or the wrongfulness of his acts. 18 U.S.C. § 17; *United States v. Dubray,* 854 F.2d 1099, 1101 (8th Cir.1988). Whether a defendant has proven that he was legally insane is a factual question, and we will reverse the trial court's finding only if it is clearly erroneous. *United States v. Reed,* 997 F.2d 332, 334 (7th Cir.1993); *United States v. Freeman,* 804 F.2d 1574, 1577 (11th Cir.1986).

The district court found that Hiebert was suffering from a severe mental defect when he committed the charged offenses, but further found that Hiebert had failed to establish that he did not appreciate the nature and quality or the wrongfulness of his acts. In reaching this conclusion, the court noted that Hiebert had attempted to distance himself from the murder-for-hire scheme. The court observed, for example, that Hiebert had been upset that the ATF agents had returned to his residence in their Jeep because he was concerned that the Jeep might be used to connect him to Caldwell's murder.

Hiebert argues that the district court should not have considered this evidence, contending that his desire to conceal his involvement in the murder-for-hire scheme does not demonstrate that he appreciated the wrongfulness of distributing marijuana and possessing a firearm. We disagree. A defendant's attempt to conceal his commission of a crime suggests that he knows the action is wrongful, *United States v. Barton,* 992 F.2d 66, 69 (5th Cir.1993); *Freeman,* 804 F.2d at 1577, and the defendant's knowledge that one crime was wrong evidences that he understood that other criminal acts were inappropriate. Additionally, we note that the district court's finding did not rest only upon

evidence that Hiebert had attempted to conceal his involvement in the murder-for-hire scheme. The court discussed additional evidence which suggested that Hiebert had known that marijuana was illegal. And, the court stated that Hiebert had presented no evidence that he had been incapable of understanding the wrongfulness of his possession of firearms.

Hiebert also argues that the district court erroneously considered Dr. Bowles' opinion that Hiebert was able to appreciate the nature and quality and wrongfulness of his criminal conduct. Hiebert contends that Dr. Bowles' testimony is irrelevant because Dr. Bowles erroneously believed that Hiebert was charged with contracting for murder rather than with distributing marijuana and possessing firearms. We doubt that the district court even relied upon Dr. Bowles' report in determining that Hiebert was capable of appreciating the wrongfulness of his acts, for the court never mentioned Dr. Bowles' report in making this finding. At any rate, it is clear that Dr. Bowles knew the nature of the federal charges against Hiebert. In the first paragraph of his report, Dr. Bowles stated that Hiebert had been charged in federal court "with Distribution of a Controlled Substance and Possession of a Firearm by a Felon" and that the "referring court is interested in receiving opinions concerning Mr. Hiebert's ... legal insanity at the time of the alleged offenses." Dr. Bowles also stated that he had reviewed the criminal complaint that charged Hiebert with distributing marijuana and with being a felon in possession of a firearm.

■ In addition to attacking the evidence supporting the court's finding, Hiebert argues that his evidence clearly and convincingly established that he did not understand the wrongfulness of his acts. Hiebert's counsel points to testimony describing Hiebert's delusional system, noting, for example, that Hiebert believed that his deceased brother was still alive and that the United States had been invaded since Pearl Harbor. That Hiebert held incredible and implausible beliefs, however, although it evidences that he suffered from a mental defect and may explain some of his conduct, does not necessarily establish that he could not appreciate the wrongfulness of his behavior.

■ Hiebert also argues that Dr. Burstin's report and live testimony demonstrate that he was legally insane. The district court specifically noted that Dr. Burstin had opined that Hiebert could not appreciate the wrongfulness of his acts, but found that in light of the evidence Dr. Burstin's opinion was not credible.[2] We will not disturb this finding, for credibility determinations are left to the trier of fact. See, e.g., United States v. Jackson, 959 F.2d 81, 82 (8th Cir.), cert. denied, — U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992); United States v. Manning, 787 F.2d 431, 435 (8th Cir.1986).

In sum, then, we conclude that the district court did not clearly err in finding that Hiebert had not established an insanity defense by clear and convincing evidence.

## B. Felon-in-possession Conviction

■ Hiebert last argues that the district court erred in denying his motion for judgment of acquittal on the count charging him with possessing the .22 caliber rifle found in the pick-up truck. He contends that the government failed to prove that he possessed the firearm. For the purposes of section 922(g)(1), possession of the firearm may be constructive. United States v. Boykin, 986 F.2d 270, 274 (8th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); United States v. Eldridge, 984 F.2d 943, 946 (8th Cir.1993). An individual constructively possesses a firearm if he owns it or has control or dominion over it. Boykin, 986 F.2d at 274; Eldridge, 984 F.2d at 946. The district court found that Hiebert had been in constructive possession of the rifle, a finding we review only for clear error. United States v. Miscellaneous Firearms & Am-

---

**2.** Although the district court apparently considered Dr. Burstin's opinion concerning Hiebert's inability to appreciate the wrongfulness of his conduct, we note that a mental-health expert's opinion that a defendant was unable to appreciate the wrongfulness of his actions is inadmissible under Federal Rule of Evidence 704(b). United States v. Kristiansen, 901 F.2d 1463, 1466 (8th Cir.1990).

*munition,* 945 F.2d 239, 240 (8th Cir.1991). We find no such error here. Hiebert had control over the rifle, as it was found in the vehicle that he was driving. *See Eldridge,* 984 F.2d at 946 (finding that a defendant had control over firearms found in the trunk of a borrowed car that he was driving).

The convictions are affirmed.

WELLFORD, Senior Circuit Judge, concurring.

I concur in Judge Wollman's opinion. I write separately to indicate that the issues in this case were close and difficult. The defense of insanity presented real and serious questions. The district judge had the opportunity to see and observe the witnesses, and particularly the defendant; he concluded, in the face of contested proof, that the defendant was able to appreciate the wrongfulness of his conduct at the crucial time. I join in affirming the district court, accordingly, because we review the evidence "in the light most favorable to the government, and uphold the verdict if there is substantial evidence to support it." *United States v. Boykin,* 986 F.2d 270, 274 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993).