DUPLANTIER, District Judge,
dissenting:
I respectfully dissent from the majority’s conclusion that Officer Mitchell did not have consent to search the suitcases. I would affirm the denial of the motion to suppress for essentially the same reasons assigned by the district judge and also because under the circumstances the searching officer was objectively reasonable in concluding that he did not need defendant’s consent.
A brief recitation of the circumstances faced by Officer Mitchell when he conducted the search in question is helpful in determining whether he was “objectively reasonable”[1] in deciding that he had the right to search the defendant’s suitcases.
Defendant Jose Jaras was a passenger in an automobile owned and operated by Ramon Salazar when Officer Don Mitchell stopped the vehicle because he suspected the driver was intoxicated. At Mitchell’s direction, Salazar got out of the car and stood in front of Mitchell’s automobile, which was parked behind Salazar’s car. In response to questioning by Officer Mitchell, Salazar stated that he was driving to Ohio to visit a sick friend, that his passenger’s name was “Cheeto”, and that he had known the passenger for “a week or two.” Officer Mitchell then spoke to defendant, who had remained seated in the front passenger seat. When asked for identification, defendant produced a resident alien card, and in response to questions by Officer Mitchell, stated that he was accompanying Salazar to Illinois to visit Salazar’s uncle. Officer Mitchell’s suspicions were sparked by several facts: Salazar and Jaras told conflicting stories, Salazar knew only defendant’s nickname, and Salazar had known the defendant only a brief period of time. Officer Mitchell was also suspicious because of the considerable age difference between Salazar and Jaras.
Officer Mitchell returned to Salazar and asked him whether there were any narcotics or illegal contraband in the car; Salazar responded, “not that I know of.” This further spurred Officer Mitchell’s suspicions. Thereafter he asked Salazar for consent to search the vehicle and its contents, which was granted.
*392 After searching the interior of the car, but prior to searching the trunk, Officer Mitchell escorted defendant to the rear of the ear where Salazar was. Officer Mitchell informed Jaras that Salazar had consented to the search of the car. Two suitcases and a garment bag were in the trunk. Officer Mitchell asked to whom the luggage belonged. Salazar said that the garment bag was his and that the suitcases belonged to Jaras. Jaras did not claim that the suitcases were his; he remained silent. After searching the garment bag, Officer Mitchell picked up the suitcases, noted that they seemed heavy, and asked Jaras what was in the suitcases. Jaras replied that he did not know what was in the suitcases. Officer Mitchell then opened the suitcases and found the marijuana which was the subject of the motion to suppress. At no time did Jaras object to the search of the suitcases.
In denying the motion to suppress, the district court relied upon United States v. Varona-Algos, 819 F.2d 81 (5th Cir.), cert. denied 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 255 (1987). In Varona, a passenger in an automobile which had been stopped by a state trooper was held to have impliedly consented to the search of his luggage in the trunk of the car when he failed to object to the search, which was conducted after the trooper had obtained the consent of the driver of the vehicle to search the vehicle and its contents. I agree with the district court that Varona is dispositive of the issues involved herein.
Although the facts in Varona and the instant case are remarkably similar, the majority points to several factual distinctions in support of the conclusion that Varona is not dispositive. Needless to say, no two cases will involve precisely the same facts. The factual differences between Varona and the instant case are of little consequence and certainly do not justify us not applying that decision here. One of the majority’s factual distinctions is that, unlike the defendant in Varona, defendant Jaras was not present when the consent to search the vehicle and its contents was obtained from the driver. But Jaras was told before the search of his suitcases that the driver had consented to the search. Thus in both cases the passenger defendants were aware of the driver’s consent prior to the search of their luggage. It cannot matter that defendant Jaras learned of the driver’s consent a few minutes after it was given, so long as he knew of it before the search of his suitcases.
The majority also points out that in Varona the vehicle owner did not limit the scope of his general consent to search the vehicle as did defendant Jaras’ driver, Salazar, who told Officer Mitchell before the search of the suitcases that they were not his. This distinction strengthens rather than weakens the conclusion that Jaras impliedly consented to the search of the suitcases. Salazar’s statement, in Jaras’ presence, that the suitcases belonged to Jaras, strongly supports the conclusion that by remaining silent thereafter Jaras impliedly consented to the search.
A third factual distinction relied upon by the majority is that there was no finding by the district court that the defendant was aware of his rights at the time of the search as there was in Varona. There is no absolute requirement that the government establish that the defendant knew that he had the right to refuse consent to search his property. United States v. Gonzales, 79 F.3d 413, 421 (5th Cir.1996). Thus the fact that the district court made no specific finding on that issue is not dispositive. In any event, the fact that prior to the search defendant Jaras was told by the officer that Salazar had consented to the search would put any reasonable person on notice that consent was a pre-requisite to search.
The majority introduces a new requirement for implied consent: it must be preceded by “an express or implied request” to search by the police officer. The Ninth Circuit case relied upon, United States v. Shaibu, 920 F.2d 1423 (1990), involves facts very different from this one. The majority concludes that “Jaras’s consent to a search of the suitcases cannot be inferred from Jaras’s silence and failure to object because the police officer did not expressly or implicitly request Jaras’s consent prior to the search.” Varona, upon which the district court relied, makes no mention of a requirement that the police officer “expressly or impliedly re *393 quest” consent as a prerequisite for implied consent to search. The majority offers no analysis of what would constitute an “implied request” to search. I am unable to understand how a police officer could “impliedly request” consent to search; I am convinced that there is no such thing. Indeed, the concept of implied consent involves situations in which because of the circumstances the police officer need not request consent.
The majority also concludes in effect that Varona is not binding precedent because in Varona the court did not analyze the search using the “objectively reasonable” standard enunciated later in Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) and Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).
In Rodriguez, consent to enter an apartment was given by the girl friend of the apartment’s occupant, who used her key to the apartment to obtain entry. She referred to the apartment as “our” apartment and told police that she had clothes and furniture in the apartment; in fact, she had previously moved out of the apartment. The lower courts concluded that because the woman did not have common authority over the premises at the time she allowed police to enter, her consent to enter the apartment was invalid. The Supreme Court reversed, despite the fact that entry was provided by someone who did not have common authority over the premises. The determination of validity of the consent to enter is judged against an objective standard: given the facts available to the officer at time, a peace officer of reasonable caution would conclude that the consenting party had authority over the premises. Illinois v. Rodriguez, 497 U.S. at 188, 110 S.Ct. at 2801.
In Jimeno, the Supreme Court applied the objectively reasonable standard in analyzing whether the search of a paper bag located in a vehicle conducted pursuant to the vehicle owner’s consent was valid. The lower courts invalidated the search because the police officer failed to obtain specific consent to search the paper bag. The Supreme Court reversed; the search was valid because it was objectively reasonable for the officer to believe that the scope of the consent permitted him to open the paper bag.
Under Rodriguez and Jimeno, a search is valid if, considering the circumstances known to the officer at the time of the search, the officer was objectively reasonable in concluding that he had consent to search.
The “objectively reasonable” standard is less stringent than that applied in Varona. In upholding the validity of the search in Varona, the court affirmed the district court’s conclusion that the defendant had impliedly consented to the search. Under Rodriguez and Jimeno, a search can be upheld if it was objectively reasonable for the officer to conclude that there was implied consent for the search, even if the officer’s conclusion was erroneous. Intervening Supreme Court cases rejecting a more restrictive application of the exclusionary rule can hardly be the basis for concluding that an earlier Fifth Circuit decision validating a search is no longer binding precedent.
The effect of the majority’s decision is to jettison the principle of implied consent. While the doctrine of implied consent has not been applied often,[2] it nonetheless remains valid especially in light of the less stringent “objectively reasonable” standard articulated by the Supreme Court in Rodriguez and Jimeno.
In addition to the implied consent relied upon by the district judge, I conclude that the search was valid because at the time the search of the suitcases was executed Jaras no longer had a right of privacy in the contents of the suitcases. Considering Officer Mitchell’s statement to defendant that Salazar had consented to the search, Salazar’s statement in defendant’s presence that the suitcases were defendant’s suitcases, defendant’s failure to claim the suitcases, defendant’s failure to object to the search, and his statement that he did not know what was in the suiteas *394 es,[3] the “search and seizure did not infringe an interest of the defendant which the Fourth Amendment was designed to protect.” Rakas v. Illinois, 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978). Officer Mitchell was objectively reasonable in concluding that he did not need Jaras’ consent, implied or express, to search the suitcases.

. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991).

. It is worth noting that Varona has been cited with approval. See United States v. Eldridge, 984 F.2d 943, 948 (8th Cir. 1993).

. In United States v. McCann, 465 F.2d 147 (5th Cir.1972), cert. denied, 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973), the court relied upon a similar disclaimer of knowledge by an occupant of an automobile with respect to the contents of the car and of a briefcase therein to support its conclusion that the officer had probable cause to search the automobile and the briefcase.