_____

No. 95-2916
_____

United States of America,                *
                                          *
          Appellee,                       *
                                          *
     v.                                   *
                                          *
Gerald Lakeith Williams,                  *
                                          *
          Appellant.                      *

_____

No. 95-2917
_____

United States of America,                *
                                          *
          Appellee,                       *
                                          *  Appeals from the United
     v.                                   *  States District Court for the
                                          *  District of Minnesota.
Carlos Vignali, Jr., also                 *
known as C-Low,                           *
                                          *
          Appellant.                      *

_____

No. 95-2920
_____

United States of America,                *
                                          *
          Appellee,                       *
                                          *
     v.                                   *
                                          *
Todd Louis Hopson, also known             *
as Ted Shia, also known as                *
Snoop,                                    *
                                          *
          Appellant.                      *

_____

Submitted:  June 12, 1996

Filed:  October 1, 1996
_____

Before BOWMAN, HEANEY, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Appellants were charged, along with twenty-eight others, with being part of a massive drug trafficking network that shipped cocaine from Los Angeles, California, to Minneapolis, Minnesota. Gerald Williams appeals the sentence imposed by the district court.[1] Todd Hopson and Carlos Vignali challenge their convictions and the district court's denial of their motions for new trial. We affirm.

## I.  BACKGROUND

On November 9, 1993, several months of investigation of a drug trafficking ring culminated in raids on several locations and arrests of a number of suspected drug dealers. The arrests continued over the next several months. In the end, thirty-one defendants were charged with various narcotics-related offenses in a thirty-four count indictment.

Williams reached a plea agreement with the government. The agreement required Williams to plead guilty to conspiring to manufacture, possess and distribute cocaine; using and carrying a firearm in relation to a drug trafficking crime; and aiding and abetting a financial transaction affecting interstate commerce. Williams further agreed to cooperate with law enforcement in investigating and prosecuting drug-related activity. The government in turn promised to recommend a three-level credit under the United States Sentencing Guidelines for acceptance of responsibility and committed to move for a downward departure at sentencing. The parties did not reach an agreement regarding any adjustment of Williams' sentence for his role in the drug network

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

pursuant to Guideline section 3B1.1(a). The district court applied a four-level leadership enhancement and sentenced Williams to a total of 180 months in prison.[2]

Williams' agreement with the prosecution prompted a flurry of guilty pleas, and in the end, all but four of the original thirty-one defendants pled guilty to various drug-related offenses. The remaining four, including Hopson and Vignali, were tried jointly in a trial that lasted for approximately six weeks.

Hopson was convicted of conspiring to manufacture, posses and distribute cocaine; aiding and abetting the use of a facility in interstate commerce with the intent to distribute cocaine; aiding and abetting the possession of cocaine with the intent to distribute; and aiding and abetting the use of communication facilities for the commission of felonies.

The jury found Vignali guilty on three counts: conspiring to manufacture, possess and distribute cocaine; aiding and abetting the use of a facility in interstate commerce with the intent to distribute cocaine; and aiding and abetting the use of communication facilities for the commission of felonies. Vignali was acquitted on Count 10, a charge of aiding and abetting the use of a facility in interstate commerce with the intent to distribute cocaine occurring on or about October 20, 1993.

Both Hopson and Vignali assert reversible error in numerous rulings. Additionally, both argue that the court erred in denying their motions for a new trial.

---

[2]Williams was sentenced to two concurrent 120 month terms for Counts 1 (the conspiracy count) and 9 (the money laundering count) of the superseding indictment and a consecutive sentence of 60 months under Count 5 (the section 924(c) count).

## II.  DISCUSSION

### A.    Williams' Leadership Enhancement

Williams argues that the district court should not have enhanced his sentence for his leadership role in the conspiracy pursuant to Guideline section 3B1.1(a).  We conclude that this issue is not reviewable, because Williams' sentence still represents a downward departure from the sentence that would have resulted if he had prevailed on this point.[3]  See United States v. Baker, 64 F.3d 439, 441 (8th Cir. 1995).

In any event, Williams' argument fails on the merits.  Williams clearly "directed or procured the aid of underlings," and was responsible for organizing others for the purposes of carrying out crimes.  United States v. Rowley, 975 F.2d 1357, 1364 n. 7 (8th Cir. 1992).  Williams himself admitted that he was one of the "big players" in the drug conspiracy.  The district court specifically found that Williams had more than a dozen subordinates.  We review a district court's factual findings in sentencing for clear error and give due deference to the district court's application of the Guidelines to the facts.  United States v. McKinney, 88 F.3d 551, 556 (8th Cir. 1996).  Certainly, distinctions between leaders and other coconspirators are not always clear.  United States v. Delpit, No. 95-2539, slip op. at 36 (8th Cir. Aug. 28, 1996).  However, we find enhancement entirely appropriate in Williams' case.

---

[3]The trial court calculated a total offense level of 39 and a criminal history of category IV, which leads to a sentence of 360 months to life.  A four-level reduction in Williams' total offense level would produce a sentencing range of 235 to 293 months.

**B.    Denial of Vignali's Severance Motion**

Before trial, Vignali made a severance motion, arguing that his role in the conspiracy did not begin until 1993, while the others were involved as early as 1980.  The district court denied that motion.

We will affirm the denial of a severance motion absent an abuse of discretion causing clear prejudice.  United States v. Darden, 70 F.3d 1507, 1526 (8th Cir. 1995), cert. denied, 116 S. Ct. 1449 (1996).  Indicted coconspirators should ordinarily be tried together, especially where proof of the conspiracy overlaps.  United States v. Pou, 953 F.2d 363, 368 (8th Cir.), cert. denied, 504 U.S. 926 (1992).  Not every defendant joined must have participated in every offense charged.  United States v. Jones, 880 F.2d 55, 62-63 (8th Cir. 1989).

We agree with the district court that joinder was proper in this case.  Each defendant was charged with at least one substantive count of violating narcotics laws or related offenses, and all were charged jointly in Count 1 with conspiracy to distribute cocaine.  Further, Vignali was charged in Counts 10 and 16 with aiding and abetting several other defendants in the commission of substantive narcotics offenses.  Vignali's case met the requirements of Rule 8 of the Federal Rules of Criminal Procedure.

Even when Rule 8 permits joinder, a trial court may sever cases to protect defendants' fair trial rights.  Fed. R. Crim. P. 14; Darden, 70 F.3d at 1527.  However, we observe a strong presumption against severing properly joined cases.  Delpit, slip op. at 10.  The key inquiry in determining whether to try defendants jointly is whether the jury can compartmentalize the evidence against each defendant.  United States v. Nevils, 897 F.2d 300, 305 (8th Cir.), cert. denied, 498 U.S. 844 (1990); United

States v. Willis, 940 F.2d 1136, 1138 (8th Cir. 1991), cert denied, 507 U.S. 971 (1993). The concern of Nevils and Willis is that a jury might throw up its hands and convict everyone. This does not describe Vignali's jury. To the contrary, it acquitted one defendant and convicted Vignali himself of some, but not all counts. A jury's conviction of some defendants and acquittal of others is a strong indication that it was able to separate evidence of different charges against different defendants. Delpit, slip op. at 11. We thus find the district court correctly denied Vignali's motion to sever.

### C.   Comments Made by Defense Counsel During Opening Statements

Each of the defendants was represented by separate counsel at trial. In his opening statement, Vignali's counsel repeatedly characterized this case as one about "a black drug dealing network." Trial Tr. vol. I at 113, 115. He then concluded, "My client is not. . . . His father [is] from Argentina, his mother [is] from Puerto Rico. . . . " Trial Tr. vol. I at 114. Vignali's co-defendants were all African-American. Counsel for the other three defendants moved for a mistrial. The trial court denied the motions but gave the jury a cautionary statement that the defendants' race should play no role in determination of their guilt or innocence. Hopson now argues that the comments by Vignali's attorney were so prejudicial that he is entitled to a new trial.

A defendant is entitled to a new trial based on attorney misconduct if:  1) the remarks or conduct were in fact improper; and 2) the remarks or conduct have prejudicially affected the defendant's substantial rights so as to deprive him or her of a fair trial. United States v. Janis, 831 F.2d 773, 778 (8th Cir. 1987), cert. denied, 484 U.S. 1073 (1988). If either one of these elements is not established, a defendant is not entitled to relief.

<u>United States v. White</u>, 969 F.2d 681, 683 (8th Cir. 1992). Since the trial court observed the mood of the jury and the tone of the remarks, its decisions should be accorded substantial deference. <u>United States v. Hernandez</u>, 865 F.2d 925, 928 (7th Cir. 1989).

We need not consider the propriety of defense counsel's remarks because Hopson cannot demonstrate prejudice. The jury's verdict indicates that it rejected any implicit invitation to use race as a proxy for guilt. Claude Phillips, an African-American, was the only defendant acquitted on all counts. Vignali, an Hispanic, was convicted on three of four counts. Thus, Hopson cannot demonstrate prejudice.

### D.    Comments Made to the Jury by the Trial Court

Toward the end of trial, the jury was released for a long weekend. Closing arguments were scheduled to begin the following Monday. Before discharging the jury for the weekend, the court advised the jury of the upcoming trial schedule. Included in those remarks, was the following:

> What I want to tell you also is this: Most of the facts are now before you. I told you at the beginning of this trial quite some time ago that you should keep your mind open, make sure you listen to all the facts and try to keep them in balance, but not to make up your mind. At this point, even though all the facts aren't in, I am going to tell you that you can start trying to sort through the facts, as you think about this over the week end, and try to get it put into your mind -- because I don't think the testimony you are going to hear is going to be earthshaking in the sense that it is going to turn your decision one way or the other; it may, so keep that thought in mind, it might have that effect -- but I think you can start putting your thoughts together now as to where the facts are in this case -- obviously there is final argument yet, and there is the instruction of the court yet, so don't make up your mind - just the facts, is what I am talking about.

Trial Tr. vol. XIX at 138-39.

After the jury was escorted out, defense counsel objected to the court's remarks, arguing that they implied that jurors should make up their minds before hearing the remainder of the evidence and argument. The court agreed to give a cautionary instruction when the jury returned on Monday, and, contrary to defendants' assertion on appeal, did in fact give such a warning.

Hopson and Vignali argue that the court's remarks constitute reversible error. In support of that claim, both defendants cite <u>United States v. Williams</u>, 635 F.2d 744 (8th Cir. 1980). Upon examination, however, <u>Williams</u> does not support the weight defendants place upon it. We held in <u>Williams</u> that it was reversible error to allow a deadlocked jury to separate overnight without any admonition to keep their deliberations secret and refrain from having outside communication concerning the case. <u>Id.</u> at 746. That is not what transpired in this case.

Unlike <u>Williams</u>, this jury was not released in the midst of their deliberations, the time of highest risk of improper outside influence. The cases cited by defendants all express concern about early <u>deliberation</u> by jurors, because of potential juror reluctance at changing opinions once they are expressed in front of others. <u>See</u>, <u>e.g.</u>, <u>Winebrenner v. United States</u>, 147 F.2d 322, 328 (8th Cir.), <u>cert. denied</u> 325 U.S. 863 (1945). The jury was repeatedly admonished to keep an open mind and to avoid any outside influences. <u>United States v. Weatherd</u>, 699 F.2d 959, 962 (8th Cir. 1983) (admonitions given to jury at other breaks during the trial sufficient to apprise jurors not to discuss case). The defendants' speculation about what could have happened in the jury room is not evidence of prejudice. While we express no opinion on the propriety of the trial court's comments, the defendants were not prejudiced. Therefore, the defendants here are not entitled to

a new trial on this issue.  <u>Williams</u>, 635 F.2d at 746 (failure to caution the jury before separation may be harmless error).

### E.    "Vouching" by the Prosecution in Closing Arguments

Vignali next asserts that the prosecution improperly vouched for its witnesses.  In closing argument the prosecutor rebutted defense allegations of witness perjury by noting that the witnesses had not yet been sentenced for their roles in the conspiracy.  It is true that "[a]ttempts to bolster a witness by vouching for his credibility are normally improper."  <u>United States v. Jackson</u>, 915 F.2d 359, 361 (8th Cir. 1990) (quoting <u>United States v. Ellis</u>, 547 F.2d 863, 869 (5th Cir. 1977)).  In order to prevail on this claim, a defendant must establish that:  1) the statements were in fact offensive; and 2) that the remarks were so offensive so as to prevent a fair trial.  <u>United States v. Boyce</u>, 797 F.2d 691, 694 (8th Cir. 1986).

Initially, we are not convinced that the complained-of remarks constituted vouching.  An argument will be deemed improper vouching when it "puts the prosecutor's own credibility before the jury [or] carr[ies an] inference of outside knowledge."  <u>United States v. Dawkins</u>, 562 F.2d 567, 569 (8th Cir. 1977).  A careful review of the record convinces us that the comments here did neither.  The prosecutor in this case did not personally vouch for the truthfulness of the witnesses' testimony, nor is there any intimation of information outside the scope of the trial.  <u>See</u> <u>United States v. Eldridge</u>, 984 F.2d 943, 947 (8th Cir. 1993).

Furthermore, in order to prevail on this issue, a defendant "must demonstrate . . .  that the improper remarks prejudicially affected his substantive rights."  <u>United States v. Skarda</u>, 845 F.2d 1508, 1511 (8th Cir. 1988).  We conclude that the prosecutor's remarks, if improper, did not render Vignali's trial fundamentally unfair.  As the district court noted, there was considerable

evidence of Vignali's guilt.  Moreover, after the disputed remarks,  the trial court gave the jury a cautionary instruction.  See Eldridge, 984 F.2d at 947. (cautionary instruction mitigated any prejudice suffered as a result of prosecutorial vouching.)

In any event, these comments were justified by the repeated allegation by the defense that the government knowingly introduced false testimony.  "Where the prosecutor, his witnesses, or the work of the government agents is attacked [by defense counsel], the District Attorney is entitled to make a fair response and rebuttal."  United States v. Lee, 743 F.2d 1240, 1253 (8th Cir. 1984).  Vignali is not entitled to relief based on this claim.

## F.    Alleged Juror Misconduct

Finally, Vignali complains that the district court's handling of his allegations of juror misconduct was inappropriate.  During trial, Vignali testified about his association with a rap album entitled "Gang Related." Based on post-trial juror interviews, Vignali claimed that some jurors had asked their children about the content and character of this music.  The district court held a limited evidentiary hearing to determine whether any extraneous information was improperly brought to the jury's attention. Every juror examined denied that any extraneous information about rap music was discussed or influenced deliberations in any way.  Vignali now argues that the investigation was inadequate in that the jurors were neither sworn nor cross-examined.

"The district court has broad discretion in handling allegations of juror misconduct and its decision will be affirmed absent an abuse of discretion."  United States v. Williams, 77 F.3d 1098, 1100 (8th Cir. 1996).  Allegations of juror exposure to extraneous information may require an investigation by the trial court.  United States v. Swinton, 75 F.3d 374, 381-82 (8th Cir. 1996).  However, Vignali's assertion that such an investigation

-10-

must allow him the opportunity to confront jurors is not supported by our case law.  In fact, we have previously found unsworn juror interviews like those conducted here to be an adequate inquiry into allegations of juror misconduct.  United States v. Blumeyer, 62 F.3d 1013, 1015 (8th Cir. 1995), cert. denied, 116 S. Ct. 1263 (1996).  The district court did not abuse its discretion in handling the allegations of juror misconduct.

### G.    Other Claimed Errors

Finally, we turn to other issues raised by Hopson and Vignali in this appeal: the trial court's exclusion of certain evidence; the district court's failure to conduct an evidentiary hearing regarding evidence which defendants characterize as newly discovered and its denial of defendants' new trial motions based on a witness' inconsistent post-trial statements. We have carefully reviewed the district court's decisions on these matters and we conclude that it ruled correctly in each instance.  With respect to these issues, we agree with the well-reasoned opinions of the district court.

## III.  CONCLUSION

For the reasons discussed above, we affirm the district  court's judgments on the defendants' appeals.  We likewise affirm the sentence imposed on Williams by the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.