[Cite as *State v. Wallace*, 2011-Ohio-1741.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                     :

    Plaintiff-Appellant                  :               C.A. CASE NO.    24383

v.                                                :               T.C. NO.    10CR926

GARY WALLACE                                      :               (Criminal appeal from
                                                                  Common Pleas Court)

    Defendant-Appellee               :

                                                  :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   8th   day of    April  , 2011.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellant

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 108 Dayton Street, Yellow Springs, Ohio 45387
    Attorney for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant State of Ohio appeals a decision of the Montgomery County Court of Common Pleas, Criminal Division, sustaining a motion to suppress filed by defendant-appellee Gary Wallace on June 22, 2010. A hearing was held on said motion on

August 24, 2010. On December 7, 2010, the trial court issued a written decision sustaining that portion of Wallace's motion which sought suppression of the physical evidence seized by police during the search of his residence located at 1007 Lenita Avenue in Dayton, Ohio. The trial court overruled the remainder of Wallace's motion to suppress. The State filed a timely notice of appeal with this Court on December 8, 2010.

I

{¶ 2}   Based on reports of drug activity at 603 Groveland Avenue in Dayton, Ohio, Sergeant Abney and Officer Coleman from the Dayton Police Department performed a "knock and advise" at the apartment located at that address.[1] The owner of the apartment, Richard Shaw, came to the door and allowed the officers to enter. Sgt. Abney testified that upon entering the living room in the apartment, he observed Wallace seated in a chair next to a coffee table on which a small bag of marijuana was located. Sgt. Abney performed a *Terry* pat-down of Wallace and found a digital scale in his right front pants pocket. Shaw subsequently signed a consent form supplied by Officer Coleman. During the search of the apartment, Sgt. Abney discovered more marijuana hidden under the mattress in the bedroom. At that point, Sgt. Abney arrested both Shaw and Wallace for drug trafficking and took them into custody.

{¶ 3}   Based on information gathered by Detective Philips from the Dayton Police Department, Sgt. Abney testified that he was aware that Wallace was also suspected of

---

[1] A knock and advise is a procedure used by the police department to investigate drug complaints. *State v. Peterson*, 173 Ohio App.3d 575, 2007-Ohio-5667. This type of investigation is done by knocking on the door and advising the occupants that there have been complaints of drug activity and then seeking consent to search. Id.

dealing drugs out of his residence located at 1007 Lenita Avenue. Sgt. Abney testified that he and several others, including Officers Watkins, Orick, Barnes, and Sgt. Blommel, then proceeded to Wallace's residence to perform a knock and advise at that address. Upon arriving at the Lenita Avenue residence, Sgt. Abney testified that he positioned himself at the back door while Officer Barnes attempted to gain entry through the front door.

{¶ 4} Officer Barnes knocked on the front door, which was eventually answered by Shelly Crane, Wallace's girlfriend. Officer Barnes asked Crane if he and the other officers could enter the residence. Crane testified that she allowed the officers to enter through the front door. Crane further testified that immediately after she allowed Officer Barnes to come inside, several other officers entered through the back door without permission. Sgt. Abney, however, testified that once he became aware that Officer Barnes had gained entry through the front door, he and Sgt. Blommel walked around the residence and came in the front door.

{¶ 5} Once inside, Officer Barnes testified that he smelled the odor of marijuana. Sgt. Abney testified that he informed Crane that they were going to perform a protective sweep of the residence to see if anyone else was present. After sweeping the residence, Officer Barnes testified that he informed Crane of the knock and advise policy and asked her if she lived at the residence. Officer Barnes testified that Crane stated that she did, in fact, live at the apartment with her boyfriend, Wallace. Officer Barnes testified that he then asked Crane to sign a consent to search form which would allow the officers to perform a search of the residence for drugs or other contraband. Officer Barnes testified that he did not threaten or coerce Crane in order to get her signature on the consent form. Crane signed

the consent form and the officers searched the residence. Sgt. Abney testified that they subsequently discovered a small caliber handgun, a sawed-off shotgun, $4,000.00 in cash, marijuana, crack cocaine, a bag of empty gel capsules, and hypodermic needles.

{¶ 6} Contrary to Officer Barnes' testimony, Crane testified that she never told the officers that she lived at the apartment, only that she stayed there from time to time. Crane further testified that she was only at the residence so that she could take a shower and change her clothes. Crane acknowledged that she signed the consent form, but testified that she did so only under duress because the officers threatened to arrest her if she did not comply. Crane testified that she only signed the consent form to avoid going to jail.

{¶ 7} On May 28, 2010, Wallace was indicted for two counts of having a weapon while under disability, possession of crack cocaine with a firearm specification, trafficking in marijuana with a firearm specification, possession of marijuana with a firearm specification, unlawful possession of a dangerous ordnance, and possession of drug paraphernalia.

{¶ 8} Wallace filed a motion to suppress on June 22, 2010. After a hearing was held on August 24, 2010, the trial court issued a written decision sustaining the portion of Wallace's motion seeking suppression of the evidence seized by police from his apartment at 1007 Lenita Avenue. The court overruled those portions of Wallace's motion which pertained to the search of Shaw's apartment, as well as statements Wallace allegedly made to police while in custody.

{¶ 9} It is from this judgment that the State now appeals.

II

{¶ 10} The State's sole assignment of error is as follows:

{¶ 11} "THE OFFICERS' BELIEF THAT SHELLY CRANE LIVED WITH WALLACE IN THE HOUSE ON LENITA AVENUE AND HAD AUTHORITY TO CONSENT TO A SEARCH WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE OFFICERS NEEDED A WARRANT."

{¶ 12} In its sole assignment, the State contends that the trial court erred when it sustained the second branch of Wallace's motion to suppress, which pertained to the evidence seized by the police during the warrantless search of Wallace's residence located at 1007 Lenita Avenue. Specifically, the State argues that the police officers had an objectively reasonable belief that Crane lived with Wallace at the Lenita Avenue residence, and thus, she possessed the authority to consent to a search of the premises.

{¶ 13} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, Montgomery App. No. 20662, 2005-Ohio-3733, citing *State v. Retherford* (1994), 93 Ohio App.3d 586. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 14} "The Fourth Amendment to the United States Constitution protects

individuals from unreasonable searches and seizures. * * * In general, the warrantless entry of a person's house is unreasonable *per se*. (Internal citations omitted). However, a police officer may validly enter and search a home, without a warrant, when the officer has obtained the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a non-present co-occupant. (Internal citations omitted)." *State v. Purser*, Greene App. No. 2006CA14, 2007-Ohio-190. "Common authority" rests on "mutual use of the property by persons having joint access or control for most purposes." *United States v. Matlock* (1974), 415 U.S. 164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242. The burden of establishing an individual's common authority over the subject premises rests upon the state. Id.

{¶ 15} "Further, if consent is given by a third party who in fact does not have valid authority, the determination of whether to enter must 'be judged against an objective standard: would the facts available to the officer at the moment *** warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises? *Illinois v. Rodriguez* (1990), 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889." *State v. Huntington*, Wood App. No. WD-10-007, 2010-Ohio-3922.

{¶ 16} The trial court suppressed the evidence seized from 1007 Lenita Avenue upon concluding that Crane did not have authority to consent to search of the premises. The court found that the evidence adduced by the State was insufficient to establish that Crane lived at the apartment. After a thorough review of the record, we conclude that the trial court utilized the wrong legal standard when it held that while "the evidence [was] clear that

Ms. Crane was an occupant of the apartment[,] *** it [was] not clear that she was living in the apartment or that she was a resident of the apartment." The State was not required to establish that Crane was, in fact, a resident of the apartment. Rather, the court should have analyzed the evidence using the following legal standard: did the police have an objectively reasonable belief that Crane possessed the apparent authority to give consent to the officers to search the premises?

{¶ 17} Based on the following exchange, it is clear that Officer Barnes had an objectively reasonable belief that Crane possessed the apparent authority to provide consent for the search:

{¶ 18} "The State: When you went inside, did you speak with her [Crane]?

{¶ 19} "Officer Barnes: Yes, I did.

{¶ 20} "Q: And what -- what was the conversation about?

{¶ 21} "A: I spoke to her and explained to her the knock-and-advise program that the City of Dayton Police Department has. *I asked her if she lived there. She stated she did. She stated that she had lived there for quite some time with her boyfriend, Gary Wallace*."

{¶ 22} Crane also provided the following testimony during cross-examination regarding whether she was living at the apartment:

{¶ 23} "The State: All right. And you live there -- or you said -- you never told the officers that you live[d] there for a long time with the defendant?

{¶ 24} "Crane: I used to stay there, but then I moved out.

{¶ 25} "Q: Okay. Did you tell the officers that you stayed there with the defendant and had been for a long time?

{¶ 26} "A: No.  'Cause I didn't -- I don't stay there.

{¶ 27} "Q: *The -- you never told that to the officers?*

{¶ 28} "A: *I said I was staying there, but -- it wasn't like that was my address or nothin'.*"

{¶ 29} In light of the foregoing testimony by Officer Barnes and the admission by Crane that she was "staying there," we find that the police had an objectively reasonable belief that Crane had apparent authority to give consent to a search of the premises.  When the police arrived at the apartment, Crane had just taken a shower and was changing into clothes that she kept at the apartment.  When Officer Barnes asked her if she lived at the apartment, Crane acknowledged that she was staying there with her boyfriend, Wallace.  The evidence adduced by the State establishes that it was reasonable for the police to believe that Crane had authority to give consent to the search.  Even if the court were to discredit Officer Barnes' testimony (and there is nothing in the court's decision drawing such a conclusion), Crane's own statement acknowledges that she told the officers that she was staying there.

{¶ 30} We also note that the trial court erred when it stated the following in its December 7, 2010, decision:

{¶ 31} "While Ms. Crane could have given the police authority to search the apartment's living areas, the Court does not find Ms. Crane had the authority to permit the police to search the bedroom where the large gym bag or the closed safe found hidden in the closet were located.[2]  The Court finds that the police needed a search warrant to conduct the

---

[2]We note that there was no testimony adduced at the hearing that the

type of search that was made upon the Defendant's bedroom."

{¶ 32} Crane's apparent authority to give consent to a search extended to the entire apartment, not just the "living areas." Once Crane informed Officer Barnes that she was staying at the apartment with Wallace, it was not unreasonable for the officers to believe that she had apparent authority over the entire premises.

{¶ 33} In his brief, Wallace relies upon *State v. Hatcher*, Ashtabula App. No. 2002-A-0100, 2004-Ohio-2451, an unreported case from the Eleventh Appellate District, for the proposition that while Crane may have had authority to consent to a search of the "common areas of the residence, she had no such authority to consent to a more intrusive search" of the premises. In *Hatcher*, the Eleventh District held that the evidence adduced during the defendant's suppression hearing was sufficient to establish that deputies lacked a reasonable belief that defendant's wife had the authority to consent to a warrantless search of a locked safe in a computer room in defendant's residence. Additionally, defendant's wife repeatedly referred to the locked safe as her husband's property, she did not know where the key to the safe was located, nor was she aware of the appearance of the key. Id.

{¶ 34} The facts in *Hatcher* are clearly distinguishable from the facts in the instant case. Significantly, Crane admitted that the safe was visible to her as she sat in the living room while the police searched the adjacent bedroom closet. Moreover, the safe was unlocked, and although she claimed no knowledge of the safe's combination, she did not assert that it was locked nor did she claim that it was solely Wallace's property.

{¶ 35} The State's sole assignment of error is sustained.

---

safe was locked.

III

{¶ 36} Having found that Crane possessed apparent authority to consent to a search of the Lenita Avenue apartment, the issue becomes whether, under the totality of the circumstances, her consent was voluntary. This issue was argued in the second branch of Wallace's motion to suppress, but was not discussed and analyzed by the court. Thus, this matter is remanded for a determination as to the voluntariness of Crane's consent.

{¶ 37} The State's sole assignment having been sustained, the judgment of the trial court is reversed, and this matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . .

FAIN, J., concurs.

FROELICH, J., concurring:

{¶ 38} I concur only to emphasize that the question whether the facts available to an officer would warrant a reasonable belief that the third party had authority over the premises, *State v. Green*, Greene App. No. 2007-CA-2, 2009-Ohio-5529, ¶65 (internal citations omitted), is an extremely fact-sensitive determination; and that the burden is on the State.

. . . . . . . . . .

Copies mailed to:

Kirsten A. Brandt
George A. Katchmer
Hon. Frances E. McGee