[Cite as *State v. Prater*, 2012-Ohio-5105.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24936 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No.11-CRB-1179 |
| v. | : | |
| | : | |
| CASEY B. PRATER | : | (Criminal Appeal from |
| | : | Kettering Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of November, 2012.

. . . . . . . . . . .

JAMES F. LONG, Kettering Municipal Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Appellee

JOHN M. EBERSOLE, Baver and Bookwalter Co., L.P.A., 202 East Central Avenue, Miamisburg, Ohio 45342
        Attorney for Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Casey B. Prater appeals from his conviction and sentence following a

no-contest plea to a minor-misdemeanor charge of marijuana possession.

{¶ 2}    Prater advances two assignments of error challenging the trial court's denial of his motion to suppress the marijuana, which police discovered during a traffic stop. Prater contends the trial court erred in finding that police obtained consent to search the stopped vehicle. Alternatively, even if consent was given, he claims the trial court erred in finding the consent voluntary.

{¶ 3}    The record reflects that Prater was a passenger in a vehicle driven by his friend, Robert Slone, and registered to his mother. Centerville police officer Adam Bennett stopped the vehicle for a traffic violation. In the course of the stop, Bennett discovered marijuana under both front seats. As a result, Prater and Slone were charged with marijuana possession. Slone also received a paraphernalia charge based on a coke can being found in the car. Prater and Slone moved to suppress the evidence. The matter proceeded to a September 19, 2011 hearing.

{¶ 4}    Based on the evidence presented, the trial court made the following factual findings:

> * * * Officer Bennett was on road patrol on June 17, 2011, at approximately 7:45 p.m. when he observed a black Honda Civic operated by Slone. The vehicle had a broken left taillight, and a smoke or dark gray plastic cover obscuring the vehicle's temporary license placard. The officer, after [e]ffecting a traffic stop, approached the Honda, spoke briefly with the occupants, then returned to his cruiser to check for wants or warrants. While in his cruiser, he called for back up, which arrived in the person of Officer [Andrew] Hardacre. During this time, both Defendants remained seated in the

Honda. After confirming that neither Defendant had a detainer or warrant, Officer Bennett decided to issue warnings rather than citations for the observed violations. Officer Hardacre, during part of this time, stood in a grassy area near the Honda's right passenger door. Officer Bennett walked to the rear of the Honda, requested Defendant Slone to exit the vehicle, and come to the rear of the vehicle. At that time he pointed out to Slone the cracked left taillight, and the smoke colored plate cover. The two discussed possible "fixes" for the perceived defects, Officer Bennett handed the warnings to Defendant Slone, and advised him he was free to go. Officer Bennett then asked Slone for permission to search the vehicle, and Slone gave the officer his permission. Defendant Prater was then asked to exit the vehicle, and stood near the rear of the Honda. As Officer Bennett got to the driver door area, he did detect the odor of marijuana coming from inside the vehicle. He searched the vehicle and found two baggies (one under each front seat) containing suspected marijuana, and also found an empty Coke can with the top removed, which had sandwich baggies containing suspected marijuana residue.

Officer Hardacre testified he heard Officer Bennett advise Defendant Slone he was "free to go," then ask for permission to search the vehicle, and heard Slone give that permission to Officer Bennett.

Defendant, Casey Prater testified the Honda is his, although it is titled in his mother's name. Prater denied giving either officer permission to search the vehicle, but did not admit or deny that Defendant Slone gave his consent to

search.

\* \* \*

The Court in reviewing the video and audio recording of the stop (State's Ex. "B") observed the officer apparently discussing the taillight and plate cover issues with Defendant Slone at the rear of the vehicle. (The audio portion of the recording is not always clear or understandable.). After handing the warning to Defendant Slone, it appears the officer asks said Defendant a question. Defendant Slone's body language suggests his agreement, and the officer requests Defendant Prater exit the vehicle as he commences to search the vehicle. At no time does it appear that Defendant Prater, the passenger[,] is asked for permission to search the vehicle. Defendant Slone did not testify at the hearing. As such, Officer Bennett's testimony that he requested permission to search the vehicle from the driver, Defendant Slone, and was granted permission is uncontroverted. Additionally, the actions of Officer Bennett and Defendant Slone in the video support the officer's testimony.

(Doc. #18 at 2-3).

{¶ 5} The trial court then held that Officer Bennett's traffic stop was supported by reasonable, articulable suspicion of a legal violation due to the obscured plate cover. The trial court also held that Slone had consented to a search of the Honda and that his consent was voluntary. In support, the trial court found that Bennett had advised Slone he was "free to go" before Slone consented to the search. After the trial court overruled the suppression motion, Prater entered a no-contest plea. The trial court accepted the plea, found him guilty, and

sentenced him accordingly. The trial court also stayed execution of the sentence pending appeal. (Doc. #20).

**{¶ 6}** In his first assignment of error, Prater challenges the trial court's finding of consent to search. Although officers Bennett and Hardacre provided uncontroverted testimony that Slone consented to the search, Prater contends "the probative value of that testimony is fatally compromised by the evidence as set forth in the video" of the traffic stop. Specifically, Prater asserts that Slone can be seen trying "to explain something" and "throwing up his arms." Prater reasons that Slone "could well have been saying that he did not have the authority to consent or he could have been revoking consent." (Appellant's brief at 4). At most, Prater contends the video establishes Slone's "mere acquiescence."

**{¶ 7}** In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." (Citation omitted). *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist. 1994). As a result, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

**{¶ 8}** In its ruling, the trial court found, as a factual matter, that Slone orally gave Officer Bennett permission to search the Honda. This factual finding is supported by evidence in the record, including Officer Bennett's testimony that he obtained consent and Officer Hardacre's testimony that he heard Bennett ask for and obtain permission to search the

vehicle. We are unpersuaded by Prater's argument that the video recording of the traffic stop clearly contradicts the officers' testimony. Nothing on the video definitively establishes that Slone did not consent to a search or that he revoked his consent. Although Slone appears to act equivocally when the issue of consent is raised, not every word on the recording can be heard. Slone's consent, or lack thereof, simply cannot be established by viewing the video alone. We are left, then, with the trial court's factual finding, based on the officers' testimony, that Slone consented. Significantly, the record contains no testimony contradicting the officers' claim, which the trial court credited. We will defer to the trial court, as the finder of fact, on this issue because its finding of consent is supported by competent, credible evidence in the form of the officers' testimony.

{¶ 9} Under his first assignment of error, Prater also claims Slone lacked authority to consent to a search. Prater acknowledges that a non-owner generally may consent to a search if he possesses authority over the area to be inspected. Prater suggests this rule does not apply, however, when another person with superior authority is present. Here, Prater contends that he, not Slone, was the only person capable of consenting to the vehicle search. In support, Prater points out that Officer Bennett knew (1) Slone did not own the vehicle, (2) the vehicle was registered to Prater's mother, (3) Prater and the registered owner shared the same address, and (4) Slone and the registered owner did not share the same address.

{¶ 10} Upon review, we find the foregoing argument to be unpersuasive. In consent-to-search cases, the test is whether police had an objectively reasonable belief that the consenting person possessed apparent authority to give consent. *State v. Wallace*, 2d Dist. Montgomery No. 24383, 2011-Ohio-1741, ¶ 15-16; *State v. Green*, 2d Dist. Greene No. 2007

CA 2, 2009-Ohio-5529, ¶ 65; *State v. Lawson*, 12th Dist. Butler No. CA99-12-226, 2001 WL 433121, *5 (April 30, 2001) ("In this case, Jenks consented to the search of the vehicle and handed the baggie over to Officer Boyd. Although, according to appellant, Jenks was not the owner of the vehicle, she had apparent authority to consent to a search. * * * The vehicle was parked in her driveway and registered to an automobile dealer. She told the police that she and Lawson were in the process of buying it together.").

**{¶ 11}** The record reflects that Officer Bennett knew Slone was not the owner of the Honda. The video of the stop shows Bennett approaching the driver's side of the car and being told that the car belonged to Prater, the passenger. After obtaining identification from Slone and Prater, Bennett returned to his cruiser and discovered that the car's registered owner actually was Prater's mother. (Tr. at 25). In his own suppression-hearing testimony, Prater claimed the car was his because he made the payments. He testified that the car could not be registered in his name for legal reasons. (*Id*. at 73). These additional facts, however, were unknown to Bennett at the time of the traffic stop. Bennett knew only that Slone was driving a car registered to Prater's mother and that Prater claimed ownership.

**{¶ 12}** Based on the foregoing circumstances, Bennett reasonably could have believed that neither Slone nor Prater owned the car. The only verifiable evidence in Bennett's possession indicated that the owner was Prater's mother. Given that neither Slone nor Prater appeared to own the car, Bennett reasonably could have believed that Slone, the driver, had authority to consent to a search. In *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court recognized that "[w]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that

consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at n.7.

{¶ 13} Case law supports the proposition that a non-owner driver of a vehicle has sufficient access or control under *Matlock* to consent to a search. *United States v. Morales*, 861 F.2d 396, 399 (3d Cir.1988) ("Under the *Matlock* test, a driver of a vehicle has the authority to consent to a search of that vehicle. As the driver, he is the person having immediate possession of and control over the vehicle."); *State v. Walton*, 565 So.2d 381, 383 (Fla.App.1990) ("In the context of vehicles on the highway and searches after a valid traffic stop, courts generally hold that the driver of a car can validly authorize the police to search the car, whether or not there are other passengers in the car."); *United States v. Dunkley*, 911 F.2d 522, 527 (11th Cir.1990) ("Under the rationale of *Matlock*, a third party in sole possession and control of a vehicle clearly has the authority to consent to its search.* * * It is a somewhat different question whether an owner/lessee of a vehicle who is a passenger in the vehicle completely abandons his or her privacy interests to the driver, to the extent that the third-party driver may rightfully consent to a full search of the entire vehicle. It is clear, however, that even if the owner/lessee is present as a passenger, the driver of a vehicle has some amount of joint access to the vehicle, and, in fact, the driver has immediate control over the vehicle."

(Citations omitted)); *United States v. Crain*, 33 F.3d 480, 484 (5th Cir.1994) ("Crain was a co-occupant of the vehicle and had permission to drive it on a late-night highway trip. In such a situation, Watkins had assumed the risk that Crain might consent to a search. * * * We therefore conclude that Crain, as the driver of the vehicle with Watkins' permission, had enough authority to consent to the search.").

{¶ 14} In *United States v. Brickley*, 916 F.2d 713 (6th Cir.1990), the Sixth Circuit Court of Appeals held that a non-owner driver's consent justified a vehicle search even when the car's owner was present in the vehicle. It reasoned:

> Seefeldt implies in his brief that Brickley could not validly consent to the car search because the officers knew that Brickley did not own the car and knew that the car's owner was available to consent. This argument is unpersuasive. In *United States v. Matlock*, 415 U.S. 164, 171 & n. 7 (1974), the Supreme Court held that persons having common access or control over property can give officers lawful authority to search. * * * The fact that the owner is available does not alter this analysis. The holding of *Matlock* does not rest on some sort of implied agency, which could be vitiated by the availability of the principal, but on the reduced expectation of privacy that naturally accompanies shared control. 415 U.S. at 171 n. 7. *See also United States v. Morales*, 861 F.2d 396, 399-400 (3d Cir.1988) (search consented to by the driver of a rental car was valid against the car's lessee, even though lessee was present and silent); 1 W. LaFave & J. Israel, Criminal Procedure section 3.10, at 352 (1984). Accordingly, we hold that Brickley's consent was valid against

Seefeldt.

*Id.* at n.2; *see also Welch v. State*, 93 S.W.3d 50, 53-54 (Tex.Crim.App.2002) ("*Matlock* instructs us that property rights are not dispositive in determining whether a third-party has joint access and control. * * * The relevant inquiry under *Matlock* is not whether Welch possessed a superior privacy interest to Hirsch's. The relevant inquiry is whether Hirsch had joint access and control over the truck for most purposes at the time she granted consent, and whether Welch assumed the risk in giving the truck to Hirsch that Hirsch would consent to a search. The answer to both questions is 'yes' even though Welch owned the truck and did not consent to a search.").

{¶ 15} Based on the foregoing authority, we reject Prater's argument that Slone could not give consent to search. At a minimum, Officer Bennett had an objectively reasonable belief that Slone possessed apparent authority to give consent. Accordingly, the first assignment of error is overruled.

{¶ 16} In his second assignment of error, Prater claims the trial court erred in finding Slone's consent to search voluntary. Prater reasons that the original purpose for the traffic stop ended when Officer Bennett handed Slone his driver's license and warning ticket. Prater asserts that Bennett lacked any suspicion of criminal activity at that point to justify requesting consent to search the Honda and that the continued detention was an illegal seizure. Prater further argues that Slone's consent to search was a product of this illegal seizure rather than a voluntary act.

{¶ 17} Prater's argument implicates *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997) (*Robinette III*) and its progeny. In *Robinette III*, the Ohio Supreme Court

held:

1. When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. * * *

2. Under Section 14, Article I of the Ohio Constitution, the totality-of-the circumstances test is controlling in an unlawful detention to determine whether permission to search a vehicle is voluntary. * * *

3. Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. * * *

*Id.* at syllabus.

{¶ 18} In a more recent case, *State v. Wilburn*, 188 Ohio App.3d 384, 2010-Ohio-3536, 935 N.E.2d 509 (2d Dist.), this court applied *Robinette III* and explained:

A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation. * * * On

the other hand, once a traffic citation is issued and the purpose of the original stop is completed, the lawful basis for the detention ceases. If police thereafter seek consent to search the vehicle absent some reasonable, articulable suspicion of criminal activity other than the traffic violation, the continued detention is unlawful. * * * Any consent to search obtained during an unlawful detention is tainted and may be invalid. * * * For such consent to be voluntary, the totality of the circumstances must demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could, in fact, leave. * * *

*Id.* at ¶ 12.

{¶ 19} In the present case, once Officer Bennett handed Slone a warning citation and returned his driver's license, "the purpose of the original stop was completed, and the lawful basis for the detention of defendant ended[.]" *State v. Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, 962 N.E.2d 383, ¶ 21 (2d Dist.). Bennett's ensuing request to search the vehicle constituted an unlawful continued detention unless he possessed a reasonable suspicion of additional criminal activity other than the traffic violations. *Id.* No such suspicion existed here. As a result, the continued detention to search the vehicle constituted an unlawful seizure. *Id.* at ¶ 28. "An illegal detention presumptively nullifies any consent that is a product of the detention." *Id.* The remaining question, then, is whether Slone's consent was a product of the illegal detention or whether it was a voluntary act of his free will. *Robinette III* at 241. ("Even though we have determined that Newsome unlawfully detained Robinette to ask for permission to search his car, our analysis is not complete. Voluntary consent, determined

under the totality of the circumstances, may validate an otherwise illegal detention and search.").

{¶ 20} "* * * [O]nce an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." *Ferrante*, at ¶ 29. "The state has the burden to show, under the totality of the circumstances, that * * * consent to search [a] vehicle was a voluntary act of free will, as opposed to mere submission to an officer's superior position of authority, which is not sufficient to demonstrate a free and voluntary consent."   (Citations omitted.) *Id.*

{¶ 21} Even if we accept the trial court's finding that Slone consented to a search of the stopped Honda, the record fails to establish that his consent was free and voluntary. Based on our review of the video, Bennett appears to tell Slone, "You guys are good to go,"  after handing Slone a warning ticket and his driver's license. Slone responds by engaging Bennett in a few seconds of conversation about the vehicle's tail light and license plate cover. During this time, the cruiser's overhead lights remain flashing and Officer Hardacre remains positioned beside the Honda's passenger-side door, where Prater sits inside. After answering Slone's questions, Bennett repeats, "You're good to go." Sloan begins moving toward his car and Officer Bennett moves slightly backwards toward the cruiser. Bennett then re-engages the conversation and asks whether there is anything illegal in the Honda. Slone responds negatively. Bennett then appears to say, "You don't care if we take a look, do you?" Slone's response suggests surprise on his part. He shrugs slightly, gestures toward the car, and begins

to reply, "I didn't know—." At that point, Bennett directs him to the curb and orders Prater out of the vehicle.

{¶ 22}   Having reviewed the video, we are unconvinced that the circumstances clearly demonstrate that a reasonable person in Slone's position would have believed at that point that he was free to refuse to give consent and could leave. We note that the defendant in *Robinette III*  admitted having been told by police that he was "free to go." *Robinette* III at 244. Despite that fact, the Ohio Supreme Court held that the a reasonable person in the defendant's position would not have felt free to leave. *Id.* at 244-246. We reach the same conclusion here.

{¶ 23}   Arguing against the foregoing conclusion, the State contends Prater lacks "standing" to challenge the constitutionality of the search and seizure of items found inside the car. The State asserts that Prater cannot object to the search because he lacks a "possessory or property interest in the property seized or the premises searched." The State further argues that "[a] mere occupant of a vehicle who neither owns nor is operating a vehicle, and who maintains no property interest in the property seized, has no legitimate expectation of privacy necessary to bring a wrongful search and seizure claim."

{¶ 24}   We are unpersuaded by the State's argument for at least two reasons. First, as explained above, Officer Bennett's continued detention of the Honda after giving Slone a warning ticket and returning his driver's license constituted an unlawful seizure under *Robinette III*. Even though he was a passenger in the vehicle, Prater was equally seized and has standing to challenge the unlawful detention. *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.E.2d 132 (2007). It follows, then, that Prater also has standing to argue that the marijuana discovered under his seat, and attributed to him, was a product of that unlawful

detention. *State v. Carter*, 69 Ohio St.3d 57, 63, 630 N.E.2d 355 (1994). ("* * * [A] passenger does have standing to object to police conduct which intrudes upon his Fourth Amendment protection against seizure of his person. If either the stopping of the car or the passenger's removal from it is unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.").

{¶ 25} Second, Prater had a sufficient interest in the property seized and the area searched. The record supports a finding that the marijuana discovered under the passenger's seat belonged to him. Indeed, that is why the State charged him with marijuana possession. The record also reflects that he had an interest in the vehicle itself. Although he was not driving and was not the registered owner of the Honda, Prater provided uncontroverted testimony that the car belonged to him because he was making the payments. Therefore, we are persuaded he has standing to challenge the continued detention and search of the vehicle.

{¶ 26} Finally, the State makes a passing argument that the consent issue is immaterial because Officer Bennett smelled marijuana when he had Prater exit the passenger side of the vehicle so he could search it. The State contends this odor of marijuana gave Bennett probable cause to search the car. The flaw in this argument is that, absent valid consent to search, Bennett had no authority to continue detaining Prater or to order him out of the Honda. As set forth above, the traffic stop already had been completed and the continued detention was unlawful. Therefore, the smell of marijuana when Bennett approached the passenger side of the vehicle to have Prater step out could not supply probable cause for a search.

**{¶ 27}** Based on the reasoning set forth above, we sustain Prater's second assignment of error. The trial court erred in failing to suppress the marijuana found under Prater's seat and attributed to him. The trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.


Copies mailed to:

James F. Long
John M. Ebersole
Hon. Thomas M. Hanna