[Cite as *State v. Wagner*, 2020-Ohio-5574.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  8-20-06

    v.

MICHAEL E. WAGNER,                O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Bellefontaine Municipal Court
Trial Court No. 19-CRB-001426

Judgment Affirmed

Date of Decision:  December 7, 2020

---

APPEARANCES:

    *William T. Cramer* for Appellant

    *Crystal K. Welsh* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Michael E. Wagner ("Wagner"), appeals the February 21, 2020 judgment of sentence of the Bellefontaine Municipal Court. For the reasons that follow, we affirm.

{¶2} On December 9, 2019, Wagner and Donna Swiger ("Swiger") were traveling along State Route 708 in Wagner's vehicle. Swiger was driving. As the vehicle approached the intersection of State Route 708 and State Route 235, it crossed the fog line, and when the vehicle turned onto State Route 235 from State Route 708, it crossed the center line into the opposite lane of traffic. Lieutenant Michael Thompson ("Lieutenant Thompson") of the Washington Township Police Department witnessed the alleged marked-lanes violations and initiated a traffic stop. After making contact with and identifying Wagner and Swiger, Lieutenant Thompson returned to his patrol car, where he searched the LEADS database for further information about Wagner and Swiger. From the LEADS database, Lieutenant Thompson learned that Wagner's and Swiger's driver's licenses were both suspended.

{¶3} Lieutenant Thompson then returned to speak with Wagner and Swiger. At that time, he asked Swiger to exit Wagner's vehicle. Once outside, Swiger was informed that her driver's license was suspended. Lieutenant Thompson then requested Swiger's permission to search the vehicle. Swiger agreed. By this point,

Lieutenant Thompson was aware that Wagner was the registered owner of the vehicle.

{¶4} After obtaining Swiger's consent to search Wagner's vehicle, Lieutenant Thompson approached Wagner, informed him that Swiger had given consent to search, and asked him to exit the vehicle. Wagner complied and subsequently consented to a search of his person. After he was searched, Wagner joined Swiger at the rear of the vehicle. Lieutenant Thompson then proceeded to search Wagner's vehicle. Although Lieutenant Thompson never asked for Wagner's permission to search the vehicle, instead telling Wagner only that Swiger had given consent and that the vehicle would be searched, Wagner did not "exhibit any hesitation" about the search. (Feb. 21, 2020 Tr. at 10-11, 14-15).

{¶5} During the search of Wagner's vehicle, Lieutenant Thompson located a multi-colored purse on the floorboard. Lieutenant Thompson searched the purse, where he discovered four hypodermic needles, cotton swabs, and approximately 20 clear plastic bags "with a white residue inside of them." (Record at 4). Wagner and Swiger insisted that they did not own the purse or its contents and that the items were likely left behind by a friend who had previously been in the vehicle. Nevertheless, Wagner and Swiger were arrested and taken to the Logan County Jail.

{¶6} Later that day, a complaint was filed in the trial court charging Wagner with one count of possessing drug abuse instruments in violation of R.C.

2925.12(A), a second-degree misdemeanor. (Record at 1). Wagner later pleaded not guilty.

{¶7} On February 13, 2020, Wagner filed a motion to suppress evidence. (Record at 36-38). In support of his motion, Wagner argued that the search of his vehicle was unlawful because Swiger did not have the authority to consent to the search. On February 18, 2020, the State filed a memorandum in opposition to Wagner's motion. (Record at 39-42).

{¶8} On February 21, 2020, the trial court denied Wagner's motion to suppress evidence. That same day, Wagner withdrew his previous not guilty plea and pleaded no contest.[1] (Record at 54-55). The trial court then fined Wagner $750 and sentenced him to 90 days in jail. (Record at 54-55). The trial court suspended the entirety of Wagner's jail sentence as well as $450 of Wagner's $750 fine. (Record at 54-55).

{¶9} On February 28, 2020, Wagner filed a notice of appeal. (Record at 56). He raises one assignment of error for our review.

### Assignment of Error

**Appellant's federal and state constitutional right to be free of unreasonable searches was violated by a vehicle search premised on unlawful consent from a third party.**

---

[1] Due to a clerical error, the original judgment entry of sentence stated that Wagner had pleaded guilty. This error has since been corrected via a nunc pro tunc entry.

{¶10} In his assignment of error, Wagner argues that the trial court erred by denying his motion to suppress evidence. Specifically, Wagner argues that the trial court erred by determining that Swiger's consent was sufficient to validate the warrantless search of his vehicle.[2]

{¶11} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997). The facts of this case, as recited in the opening paragraphs of this opinion, are not in dispute. As a result, we are concerned only with whether these facts satisfy the applicable legal standards.

{¶12} Generally, warrantless searches are unreasonable, and therefore impermissible, under both the Fourth Amendment to the United States Constitution

---

[2] Wagner does not dispute the legality of the initial traffic stop or argue that Swiger's consent, if otherwise valid, did not extend to the search of the purse.

and Article I, Section 14 of the Ohio Constitution. *State v. Ward*, 1st Dist. Hamilton No. C-160560, 2017-Ohio-8141, ¶ 13; *State v. Smith*, 73 Ohio App.3d 471, 474-475 (6th Dist.1991), citing *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978). However, the warrant requirement is subject to a handful of "specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967); *State v. Nickelson*, 7th Dist. Belmont No. 16 BE 0039, 2017-Ohio-7503, ¶ 15, quoting *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). "One specifically established exception to the warrant requirement is 'a search that is conducted with consent.'" *State v. Hawkins*, 10th Dist. Franklin No. 15AP-35, 2016-Ohio-1404, ¶ 98, quoting *State v. Portman*, 2d Dist. Clark No. 2013-CA-68, 2014-Ohio-4343, ¶ 11, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973). "'"[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority."'" *State v. Nwachukwa*, 3d Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶ 28, quoting *State v. Aguirre*, 3d Dist. Seneca Nos. 13-11-19 and 13-11-20, 2012-Ohio-2014, ¶ 12, quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319 (1983).

{¶13} Here, it is undisputed that Lieutenant Thompson obtained Swiger's consent to search Wagner's vehicle, and Wagner does not argue that Swiger's

consent was not freely and voluntarily given. It is also undisputed that Lieutenant Thompson did not ask Wagner for his consent to search the vehicle and that Wagner did not give his consent. Moreover, it has not been argued that Lieutenant Thompson had probable cause to search Wagner's vehicle, which would sustain the search irrespective of Swiger's consent. Accordingly, the legality of the search of Wagner's vehicle depends entirely on whether Swiger had the authority to consent to the search.

{¶14} "Consent to search can be 'obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises'" or effects searched. *State v. Sky Lake*, 4th Dist. Lawrence Nos. 17CA15 and 17CA16, 2018-Ohio-1707, ¶ 18, quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793 (1990); *see United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988 (1974). Common authority

> is * * * not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and

that the others have assumed the risk that one of their number might

permit the common area to be searched.

*Matlock* at 171, fn. 7. In the context of automobile searches, the weight of authority

supports that "a non-owner driver of a vehicle has sufficient access or control * * *

to consent to a search." *State v. Prater*, 2d Dist. Montgomery No. 24936, 2012-

Ohio-5105, ¶ 13; *see United States v. Crain*, 33 F.3d 480, 484 (5th Cir.1994); *United*

*States v. Dunkley*, 911 F.2d 522, 526 (11th Cir.1990); *United States v. Morales*, 861

F.2d 396, 399 (3d Cir.1988); *United States v. Brickley*, 6th Cir. Nos. 90-5182 and

90-5183, 1990 WL 159353, *1 (Oct. 19, 1990), fn. 2. This is at least in part because

the driver of a vehicle has "immediate possession of and control over the vehicle."

*Morales* at 399; *see Dunkley* at 526 ("[T]he driver of a vehicle has some amount of

joint access to the vehicle * * *.").

{¶15} While Wagner acknowledges this body of case law, he argues that it

is not controlling. Wagner argues that this case is instead controlled by *State v.*

*Bernius*, 177 Ohio St. 155 (1964). *Bernius* involved a casual borrower of a vehicle

who consented to a search of the vehicle outside of the owner's presence. The court

observed that because "the police who searched the automobile knew that it was not

owned by [the borrower][,] * * * [the borrower's] consent could only be effective if

authorized by [the owner]." *Id.* at 157. Although the court opined that "[s]ince [the

owner] had entrusted the automobile to [the borrower], it might reasonably be

argued that [the owner] had apparently authorized [the borrower] to consent to a search of his automobile," the court ultimately held that "where the owner of an automobile entrusts the possession and control thereof to another, a [warrantless] search thereof with the consent of the one so entrusted but without the express consent or authorization of such owner is, as against such owner, * * * an unreasonable search." *Id.* at 157-158.

{¶16} Wagner asserts that Swiger was like the casual borrower in *Bernius* in that he "merely allowed [Swiger] to drive him around." (Appellant's Brief at 5). He further maintains that "[t]here is no indication here that [he] *gave* Swiger the same type of broad joint control over his car as there is with two people living together." (Emphasis added.) (*Id.*). Hence, Wagner appears to argue that Swiger's consent was invalid because (1) while he authorized Swiger to drive his vehicle, his authorization did not extend to permit Swiger to consent to a search of the vehicle and (2) Swiger did not have common authority over the vehicle as her relationship to the vehicle was limited and brief, rather than extensive and enduring.

{¶17} Both prongs of Wagner's argument are unpersuasive. First, while the Supreme Court of Ohio has never overruled *Bernius*, we are doubtful that it reflects the current state of the law. For one, *Bernius* was decided a decade before *Matlock*. Furthermore, in reaching its holding, the court relied on *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889 (1964), in which the Supreme Court of the United States

concluded that the rights protected by the Fourth Amendment were "right[s] * * * which only the petitioner could waive by word or deed, either directly or through an agent." *Id.* at 489. Yet, as at least one court has observed, this "agency analysis should have been put to rest by the Supreme Court's reasoning in *Matlock*; that is, it is the consenter's relationship to the property, not the tenor of her relationship with the defendant, that is determinative of whether she can permit a search in her own right." *United States v. McAlpine*, 919 F.2d 1461, 1464 (10th Cir.1990), fn. 2; *see Brickley* at *1, fn. 2 ("The holding of *Matlock* does not rest on some sort of implied agency * * *."). Moreover, the Supreme Court of Ohio itself later recognized that a person with "common access, control[,] and use of [an] automobile" can "authorize a search thereof valid against [the owner]" without the owner's express delegation of the authority to consent to a warrantless search. *State v. Scott*, 61 Ohio St.2d 155, 162-163 (1980). Consequently, while we do not go so far as to say that the agency-based analysis espoused by the court in *Bernius* is entirely defunct or without application in all third-party consent cases, post-*Bernius* developments make clear both that an owner's express authorization generally is not determinative of whether a third party has the authority to consent to a search and that a third party can have the authority to consent in the absence of such express authorization. Accordingly, under the facts of this case, because Wagner's authorization was not the sine qua non of Swiger's authority to consent, it is

irrelevant whether or not Wagner authorized Swiger to consent to a search of his vehicle.

{¶18} Furthermore, the validity of Swiger's consent does not turn on whether Swiger had joint access or control of Wagner's vehicle at all times and for all purposes. Instead, "'[t]he relevant inquiry is whether [a person] had joint access and control over [a vehicle] for most purposes *at the time [they] granted consent * * *.'"* (Emphasis added.) *Prater*, 2012-Ohio-5105, at ¶ 14, quoting *Welch v. State*, 93 S.W.3d 50, 53-54 (Tex.Crim.App.2002). Here, because Swiger was driving Wagner's vehicle, and was thus the person "having immediate possession of and control over the vehicle," right before she consented to the search, Swiger had common authority over Wagner's vehicle at the time consent to search was given. Therefore, regardless of whether Swiger's common authority was created just before the traffic stop or ended shortly thereafter, Swiger had sufficient authority to give valid consent at the time consent was requested.

{¶19} Finally, Wagner argues that Swiger's consent cannot support the search because Lieutenant Thompson "knew that the owner of the vehicle was present, but willfully avoided seeking permission from the one person who may have had a reason to object." (Appellant's Brief at 6). However, the presence of a person with a proprietary or possessory interest superior to the driver does not itself negate the driver's authority to consent to a search of the vehicle. *Dunkley*, 911

F.2d at 526; *Morales*, 861 F.2d at 399-400; *Brickley*, 1990 WL 159353, at *1, fn. 2; *State v. Saleem*, 8th Dist. Cuyahoga No. 99330, 2013-Ohio-3732, ¶ 20-29; *Prater* at ¶ 9-15. This is true even when law enforcement officers know that a person with a proprietary or possessory interest superior to the driver is present in the vehicle. *See Brickley* at *1, fn. 2 (driver's consent to search was valid even though "officers knew that [the driver] did not own the car and knew that the car's owner was available to consent"); *Prater* at ¶ 9-15 (concluding that non-owner driver's consent was valid despite passenger's claim that he owned the vehicle and officer's knowledge that the vehicle was registered in the name of the passenger's mother); *Ledda v. State*, 564 A.2d 1125, 1128-1129 (Del.1989) (upholding the validity of non-owner driver's consent notwithstanding owner's claim that "the police purposely failed to request his consent, even though they knew that he possessed a superior privacy interest"); *but see Johnson v. State*, 905 P.2d 818, 821 (Okla.Crim.App.1995) (concluding that "the driver's consent must be invalid as a matter of law, where a known owner is present and able to object to the search"). Moreover, while law enforcement officers cannot remove a vehicle's owner for the purpose of avoiding the possibility that the owner might object to a search, once the driver of a vehicle consents to a search of the vehicle, law enforcement officers are not required to afford the owner an opportunity to give their own consent or countermand the driver's consent. *See United States v. Lopez*, 547 F.3d 397, 399-

400 (2d Cir.2008) (holding that "law enforcement officers are under no affirmative obligation to request consent from a potentially objecting co-occupant before acting on permission they received from another occupant," "no matter how easy or convenient it might [be] to do so"), citing *Georgia v. Randolph*, 547 U.S. 103, 121-122, 126 S.Ct. 1515 (2006).

{¶20} There is no indication that Lieutenant Thompson removed Wagner for the purpose of preventing him from objecting to the search. On the contrary, the record reflects that Wagner was nearby when Swiger consented to the search, that Lieutenant Thompson told Wagner that Swiger had consented to the search, and that Wagner knew that his vehicle would be searched pursuant to Swiger's consent. The record is equally clear that although Wagner had the opportunity to object to Swiger's consent and to the search, he apparently remained silent and withheld any objections. Finally, while the record establishes that Lieutenant Thompson did not ask for Wagner's consent to search, he was not required to do so. Therefore, given that Swiger could validly consent to the search of Wagner's vehicle and that Wagner did not object, Lieutenant Thompson's warrantless search of Wagner's vehicle was reasonable. *See United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir.1993); *Dunkley* at 526; *Ledda* at 1128-1129. As a result, we conclude that the trial court did not err by denying Wagner's motion to suppress evidence.

{¶21} Wagner's assignment of error is overruled.

**{¶22}** Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**