[Cite as *State v. Saleem*, 2013-Ohio-3732.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99330**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## AHMED SALEEM

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-563850

BEFORE:    Jones, P.J., S. Gallagher, J., and E.A. Gallagher, J.

RELEASED AND JOURNALIZED:    August 29, 2013

**ATTORNEY FOR APPELLANT**

Ruth Fischbein-Cohen
3552 Severn Road
Suite 613
Cleveland Hts., Ohio 44118


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Mary Weston
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

**{¶1}** Defendant-appellant, Ahmed Saleem, appeals his convictions for improperly handling firearms in a motor vehicle and carrying concealed weapons. We affirm.

**{¶2}** In 2012, Saleem was charged with improperly handling firearms in a motor vehicle and carrying concealed weapons, with forfeiture specifications. Saleem filed a motion to suppress, which the trial court denied after a full hearing. Saleem pleaded no contest, and the trial court found him guilty of the charges and ordered him to forfeit two handguns, a shotgun, ammunition, a mask, and a pair of gloves. The trial court found that the offenses were allied offenses of similar import and the state elected to proceed to sentencing on the carrying concealed weapons conviction. The trial court sentenced Saleem to three years of community control sanctions with conditions.

**{¶3}** The following evidence was adduced at the hearing on the motion to suppress.

**{¶4}** Garfield Heights Police Officers Patrick Hace and Richard Fogle were on duty in their zone car when a car, driven by codefendant Lloyd Spivey, passed by them with a cracked windshield. The officers turned their car around and began to follow Spivey. Spivey turned left onto East 131st Street and then onto Thornhurst Avenue, without using a turn signal. Spivey then quickly turned the car into the driveway of a house.

**{¶5}** The officers pulled into the driveway behind Spivey, activated their lights to

effectuate a traffic stop, and exited their zone car. The officers approached the car, one officer on each side of the car. The officers asked for identification of the driver and his four passengers and returned to their zone car to verify the occupants' identities.

{¶6} One of the officers noticed that a backseat passenger kept glancing back at the officers and opened the car door, which both officers testified could mean the passenger was going to try and run. So they exited their zone car again and approached the car.

{¶7} At that point, dispatch informed the officers that one of the backseat passengers, a juvenile, had provided incorrect information. The officers asked the juvenile to get out of the car. Prior to placing the juvenile in the zone car to attempt to find out his identity, the officers patted him down and found shotgun shells in his pocket.

{¶8} Officer Hace testified that

before we put him in the police car to further investigate his identification we patted him down, as we do before we put anybody into the back seat of our patrol car, and we located numerous shotgun shells in the cargo pants pocket.

{¶9} Officer Fogle asked Spivey to get out of the car and questioned Spivey about the ammunition found on his passenger. Officer Fogle asked Spivey if there was anything illegal in the car and Spivey replied, "No." Officer Fogle asked Spivey if they could search the car; Spivey consented. At this time, the other passengers, including Saleem, were still sitting in the car.

{¶10} Officer Fogle testified that Spivey was "very" cooperative. Prior to the search, the officers removed the occupants from the vehicle. At no time did Saleem

object to the search of the car, and he was able to observe the entire search.

{¶11} Officer Hace performed the search and located shotgun shells in plain view on the floor in the back seat area. He then located two handguns and a box of ammunition in the unlocked glove box. At that time, Hace contacted the detective bureau, and the search continued in the trunk of the car. In the trunk, officers found a shotgun, mask, clothes, "I.D. that belonged to somebody else," and gloves.

{¶12} On cross-examination, Officer Hace testified that he detained the car and its occupants on a traffic stop. During the initial detention, the officer testified, before they found shotgun shells on the juvenile, the officers did not feel like their safety was threatened. He further testified that he did not initially run the license plate to identify the owner of the car because the officers were pulling the car over for a cracked windshield, "we weren't investigating a stolen car."

{¶13} It was not until after the search, according to Hace, that he determined that Saleem owned the vehicle. Spivey received a citation for a safety-belt violation, a cracked windshield, and a turn-signal violation.

{¶14} The trial court denied the motion to suppress. In its ruling, the court found that Spivey had the authority to consent to the search of Saleem's car and Saleem, who was present, never told police he owned the car or contested the search.

{¶15} Saleem filed a timely notice of appeal, raising two assignments of error for our review:

> I. The trial court committed error in declining to suppress evidence based on the fact that the police prolonged the detention and engaged in a fishing

expedition.

II.   The trial court committed error in denying the motion to suppress evidence based on the fact that under the circumstances a third party cannot give consent to search the car.

Law and Analysis

**{¶16}** A motion to suppress presents a mixed question of law and fact.   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   Consequently, we give deference to the trial judge's factual findings but review the application of law to fact de novo.   *Id.*

**{¶17}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.   *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), paragraph one of the syllabus.   Searches conducted outside the judicial process, by officers lacking a prior judicial warrant, are per se unreasonable, subject to a few specifically established exceptions.   *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).   One of those exceptions is a search that is conducted pursuant to voluntary consent.   *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973).

**{¶18}** Another established exception to the warrant requirement is the rule regarding investigative stops announced in *Terry*.   A traffic offense meets the requirements under *Terry*, constituting reasonable grounds for an investigative stop. *State v. Davenport*, 8th Dist. Cuyahoga No. 83487, 2004-Ohio-5020, ¶ 16, citing *State v. Carlson*, 102 Ohio App.3d 585, 596, 657 N.E.2d 591 (9th Dist.1995).   The United States

Supreme Court has also recognized that a police officer may order a driver or passenger to exit his or her vehicle if properly stopped for a traffic violation, even if the officer does not have reasonable suspicion of criminal activity. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), paragraph one of the syllabus (driver) and *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.E.2d 41 (1997) (passenger).

{¶19} Within his assignments of error, Saleem makes two general arguments. First, he argues that the motion to suppress should have been granted on the basis that his detention was prolonged. Second, Saleem contends the court should have granted the motion because Spivey did not have the authority to consent to the search of Saleem's car. We will discuss the assignments of error out of order, however, because if the third-party consent was justified then the state only had to show that Saleem's detention was reasonable until the consent to search was given.

Third-Party Consent

{¶20} In the second assignment of error, Saleem argues that the trial court erred in finding that the search of Saleem's car was valid pursuant to Spivey's third-party consent.

{¶21} In discussing third-party consent, the United States Supreme Court, in *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), recognized that

> [w]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

Common authority rests

> on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at fn. 7.

{¶22} In *State v. Prater*, 2d Dist. Montgomery No. 24936, 2012-Ohio-5105, the Second District Court of Appeals analyzed relevant state and federal court decisions to conclude that case law "supports the proposition that a non-owner driver of a vehicle has sufficient access or control under *Matlock* to consent to a search." *Id.* at ¶ 13.

{¶23} In *Prater*, the police knew the driver did not own the car when they searched the vehicle. But the court rejected Prater's argument that the driver could not consent to the search. "At a minimum, [the officer] had an objectively reasonable belief that [the driver] possessed apparent authority to give consent." *Id.* at ¶ 15.

{¶24} In *United States v. Brickley*, 916 F.2d 713 (6th Cir.1990), a case relied on by the *Prater* court, the Sixth Circuit Court of Appeals noted that a non-owner driver's consent justified a vehicle search even when the car's owner was present in the vehicle. The court reasoned that the fact that the owner is available does not alter the analysis pursuant to *Matlock*.

> The holding of *Matlock* does not rest on some sort of implied agency, which could be vitiated by the availability of the principal, but on the reduced expectation of privacy that naturally accompanies shared control.

*Brickley* at fn. 2.

**{¶25}** The consent given to officers must also be voluntary, an issue not raised by Saleem in his appeal. Notwithstanding this fact, we note that voluntariness of consent is a question of fact to be determined from the totality of the circumstances, with the government having the burden of showing by "clear and positive" evidence that the consent was "freely and voluntarily" given. *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988).

**{¶26}** In this case, the testimony showed that Spivey had the authority to drive Saleem's car. Unlike the situation in *Prater*, the officers did not know that Saleem owned the car until after the search was conducted. Officer Hace testified that he and his partner did not initially run the license plate on the car because the driver was acting suspiciously in "how they shot into a driveway real quick. So my first thinking is get to the vehicle. I will run [the license plate] later." Hace testified that the traffic stop was for a cracked windshield, not a stolen car, therefore it was not imperative to initially determine who owned the car. Hace further testified that the officers probably would have determined the owner of the car sooner were it not for the suspicious movements of a backseat passenger, which caused the officers to quickly exit their zone car a second time.

**{¶27}** Officer Fogle testified that after they found the shotgun shells on one of the juvenile passengers, he removed Spivey from the car for questioning. He asked Spivey if there was anything illegal in the car, to which Spivey replied, "No." He then asked for Spivey's consent to search the car. Spivey readily gave his consent to search. Officer

Fogle testified that Spivey was "very" cooperative and never told the officer he did not own the car. After Saleem was removed from his car, he was placed in a zone car within close proximity of his car and was able to observe the search of his vehicle; he never informed the officers that he was the true owner of the car or otherwise objected to the search.

{¶28} Finally, we note that Saleem does not argue that Spivey's consent was involuntary or that he was coerced into giving his consent; moreover, our review of the testimony in this case shows that, under the totality of the circumstances, Spivey's consent was voluntary.

{¶29} Based on these facts, we accept the trial court's ruling because it is supported by competent, credible evidence.

{¶30} Therefore, the second assignment of error is overruled.

Prolonged Detention

{¶31} In the first assignment of error, Saleem contends that the court should have granted his motion to suppress because he was subject to an unlawful prolonged detention during the traffic stop. Because we find no error in the trial court's finding that Spivey consented to the search of Saleem's car, we need now only determine whether the officers' initial detention of Saleem, before the consent to search was granted, was reasonable.

{¶32} A police officer may expand the scope of the stop and may continue to detain the vehicle without infringing on the Fourth Amendment

if during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, * * * for as long as the new articulable and reasonable suspicion continues.

*State v. Waldroup*, 100 Ohio App.3d 508, 513, 654 N.E.2d 390 (12th Dist.1995). The scope of a detention "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In determining whether a detention is reasonable, the court must look at the totality of the circumstances. *State v. Pope*, 8th Dist. Cuyahoga No. 92915, 2010-Ohio-1749, ¶ 25, citing *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

**{¶33}** Although Saleem concedes on appeal that the police officers may have had probable cause justifying the stop of his vehicle due to the cracked windshield, he asserts that the officers had no reasonable or articulable suspicion to believe his party was engaged in any further criminal activity. Therefore, once the officers were able to write a citation for the windshield, the officers should have let Saleem go and any further detention was a "fishing expedition."

**{¶34}** The trial court determined that the officers effectuated a traffic stop for a cracked windshield and improper signaling. The trial court found:

[W]hen the officers found that this juvenile's name was not correct * * * it looked like they had a limited purpose to determine who that particular person was. And in patting that person down they found the shotgun shells, which * * * gave the officers the authority at that point to determine whether or not the weapons were located in that car from where the shotgun shells came from[.] * * *

**{¶35}** Here there was an articulable reason why the police wanted to search.

**{¶36}** The officers testified that they stopped the car for a cracked windshield. Then, because they were unable to determine the identity of a juvenile passenger, solely because that person had given the officers incorrect information, they removed the youth from the car to ask him a few questions. The officers decided to place the juvenile in the back of the zone car to determine his identity. Officer Fogle asked the juvenile if he had anything illegal on him, to which the juvenile replied, "No." He asked the juvenile if he could pat him down, to which the juvenile replied, "Yes." The officer patted the juvenile down, which Officer Hace testified was the procedure before anyone is placed in his zone car.

**{¶37}** Officer Fogle testified he immediately felt what he knew from his experience and training was shotgun shells in the juvenile's pocket. The officers asked Spivey to get out of the car to question him about the shotgun shells found on his young passenger. It was at this time, before any other occupants of the car were removed, that Spivey gave consent to search the car. The officers located additional shotgun shells in plain view before finding two handguns in the unlocked glove box and a shotgun in the trunk of the car.

**{¶38}** Based on the totality of the circumstances, we do not find that Saleem's detention was unreasonable in scope or length.

**{¶39}** Therefore, the first assignment of error is overruled.

**{¶40}** Finding that the trial court's decision to deny the motion to suppress was supported by competent, credible evidence, we affirm the judgment of the trial court.

**{¶41}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN A. GALLAGHER, J., CONCUR